HARDY, APPELLANT, *v.* VERMEULEN ET AL., APPELLEES.

[Cite as Hardy *v.* VerMeulen (1987), 32 Ohio St. 3d 45.]

(No. 86-1448—Decided August 12, 1987.)

*Jerry L. Maloon Co., L.P.A.,* and *Jeffrey L. Maloon,* for appellant.

*Robert L. Herron,* for appellees.

HERBERT R. BROWN, J. In this case, the four-year period specified by R.C. 2305.11(B) would, if applied, bar the appellant's claim before he knew of the injury he suffered.[1] In order to affirm we are required: (1) to find that R.C. 2305.11(B) may constitutionally achieve that result and (2) to apply R.C. 2305.11(B) retroactively to bar a cause of action where the act of malpractice occurred prior to the effective date of the statute.

I

Our analysis begins with an examination of what R.C. 2305.11(B) is and what it is not. It is not a traditional statute of limitations, since the ap-

---

[1] For our determination herein, we take the allegations in appellant's complaint as true since judgment was entered by the trial court, against appellant, on the pleadings.

pellant was not aware of his injury and thus his cause of action was extinguished before he could act upon it.[2] R.C. 2305.11(B) does not alter the standard of proof in malpractice cases and it does not change the evidentiary requirements of such cases. It does not alter the elements in the tort or change the rule of damages. In short, R.C. 2305.11(B) does not change the substantive character of a malpractice action.

R.C. 2305.11, if applied to those who suffer bodily injury from medical malpractice but do not discover that injury until four years after the act of malpractice, accomplishes one purpose—to deny a remedy for the wrong. In other words, the courts of Ohio are closed to those who are not reasonably able, within four years, to know of the bodily injury they have suffered.

Section 16, Article I of the Ohio Constitution provides:

"All courts shall be open, and *every person, for an injury done him in his* land, goods, *person,* or reputation, *shall have remedy by due course of law,* and shall have justice administered without denial or delay." (Emphasis added.)

The appellant has no remedy for an injury to his body when his claim is extinguished before he knew of the injury or could have reasonably discovered it.[3]

Thus, as applied to the facts in the case *sub judice,* R.C. 2305.11 is in violation of Section 16, Article I of the Ohio Constitution. The language in the Constitution is clear and leaves little room for maneuvering. Our courts are to be open to those seeking remedy for injury to person, property, or reputation.

As this court said in *Kintz* v. *Harriger* (1919), 99 Ohio St. 240, 247, 124 N.E. 168, 170:

"Manifestly, when the constitution of the state declares and defines certain public policies, such public policies must be paramount, though a score of statutes conflict and a multitude of judicial decisions be to the contrary.

*"No general assembly is above the plain, potential provisions of the constitution, and no court, however sacred or powerful, has the right to declare any public policy that clearly contravenes or nullifies the rights declared in the constitution."* (Emphasis added.)

The holding in *Kintz* reads as follows:

"1. The Constitution of Ohio, Bill of Rights, Section 16, provides, among other things, 'Every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law.'

"2. It is the primary duty of courts to sustain this declaration of right and remedy, wherever the same has been wrongfully invaded." *Id.* at paragraphs one and two of the syllabus.

See, also, *Byers* v. *Meridian Printing Co.* (1911), 84 Ohio St. 408, 95

---

[2] Statutes which have the effect of denying a remedy to one before it accrues have sometimes been described as statutes of repose and they differ from traditional statutes of limitations which impose a period of time for bringing suit after one's cause of action accrues.

[3] A cause of action for medical malpractice does not accrue until the patient discovers or in the exercise of reasonable care and diligence should have discovered the resulting injury. *Oliver* v. *Kaiser Community Health Found.* (1983), 5 Ohio St. 3d 111, 5 OBR 247, 449 N.E. 2d 438. The same rule was applied to a cause of action for legal malpractice in *Skidmore & Hall* v. *Rottman* (1983), 5 Ohio St. 3d 210, 5 OBR 453, 450 N.E. 2d 684.

N.E. 917, paragraph two of the syllabus (a legislative enactment changing the presumption and burden of proof as to malice in defamation cases was found unconstitutional and void under Section 16, Article I); *Williams* v. *Marion Rapid Transit, Inc.* (1949), 152 Ohio St. 114, 39 O.O. 433, 87 N.E. 2d 334 (denial of remedy to an unborn viable child violated Section 16, Article I); *Primes* v. *Tyler* (1975), 43 Ohio St. 2d 195, 205, 72 O.O. 2d 112, 117, 331 N.E. 2d 723, 729 (the Ohio Guest Statute was found in violation of Section 16, Article I, "* * * in that it closes the courts and denies a remedy by due course of law to some but not all the people of this state * * *").[4]

In *Lafferty* v. *Shinn* (1882), 38 Ohio St. 46, 48, this court recited Section 16, Article I and said that "* * * it is not within the power of the legislature to abridge the period within which an existing right may be so asserted as that there shall not remain a reasonable time within which an action may be commenced." If the legislature may not constitutionally enact an unreasonable statute of limitations, it follows that the legislature cannot deprive one of a right before it accrues.

We agree with the reasoning of the Supreme Court of South Dakota in *Daugaard* v. *Baltic Co-op. Bldg. Supply Assn.* (S.D. 1984), 349 N.W. 2d 419, 424-425, that a statute such as R.C. 2305.11(B) unconstitutionally locks the courtroom door before the injured party has had an opportunity to open it.

When the Constitution speaks of remedy and injury to person, property, or reputation, it requires an opportunity granted at a meaningful time and in a meaningful manner. See, also, *Kennedy* v. *Cumberland Engineering Co.* (R.I. 1984), 471 A. 2d 195; *Boddie* v. *Connecticut* (1970), 401 U.S. 371, 377-378; *Neagle* v. *Nelson* (Tex. 1985), 685 S.W. 2d 11, 12; *Berry* v. *Beach Aircraft Corp.* (Utah 1985), 717 P. 2d 670; *Jackson* v. *Mannesmann Demag Corp.* (Ala. 1983), 435 So. 2d 725; *Overland Constr. Co.* v. *Sirmons* (Fla. 1979), 369 So. 2d 572; *Kenyon* v. *Hammer* (1984), 142 Ariz. 69, 75-76, 688 P. 2d 961, 967-968.

Accordingly we hold that R.C. 2305.11(B), as applied to bar the claims of medical malpractice plaintiffs who did not know or could not reasonably have known of their injuries, violates the right-to-a-remedy provision of Section 16, Article I of the Ohio Constitution.

## II

The result we reach follows logically from our decision of December 22, 1986 in *Mominee* v. *Scherbarth* (1986), 28 Ohio St. 3d 270, 28 OBR 346, 503 N.E. 2d 717, syllabus, in which we held R.C. 2305.11(B) unconstitutional as applied to minors.[5] At that time, five of the seven court members suggested a violation of Section 16, Article I.

In *Mominee,* we expressed no opinion as to the constitutionality of R.C. 2305.11(B) as applied to adults (*id.* at

---

[4] Our attention has been drawn to R.C. 2305.29, in which the legislature abolished the common-law actions of criminal conversation and alienation of affections. ·That statutory abolition did not violate Section 16, Article I because the denial of remedy did not reach injury to *person, property,* or *reputation.* See *Haskins* v. *Bias* (1981), 2 Ohio App. 3d 297, 2 OBR 329, 441 N.E. 2d 842; *Vrabel* v. *Vrabel* (1983), 9 Ohio App. 3d

263, 9 OBR 477, 459 N.E. 2d 1298; and *Slusher* v. *Oeder* (1984), 16 Ohio App. 3d 432, 16 OBR 503, 476 N.E. 2d 714.

[5] See, also, *Schwan* v. *Riverside Methodist Hospital* (1983), 6 Ohio St. 3d 300, 6 OBR 361, 452 N.E. 2d 1337, syllabus, wherein we first held that "R.C. 2305.11(B) is unconstitutional with respect to malpractice litigants who are minors."

fn. 6), although Justices Douglas and C. Brown stated the opinion that the statute, when so applied, would be unconstitutional.

Little distinction can be made between an adult plaintiff who did not know of his or her injury and a minor. It may be argued that the adult who was unaware of the injury is under a *greater* disability than the minor who knew of the injury but did not assert a claim within the four-year period.[6]

### III

We are mindful that acts of the General Assembly are presumed valid. See *State* v. *Dorso* (1983), 4 Ohio St. 3d 60, 61, 4 OBR 150, 151, 446 N.E. 2d 449, 450; *Peebles* v. *Clement* (1980), 63 Ohio St. 2d 314, 321, 17 O.O. 3d 203, 207, 408 N.E. 2d 689, 693; *State, ex rel. Taft,* v. *Campanella* (1977), 50 Ohio St. 2d 242, 246, 4 O.O. 3d 423, 425, 364 N.E. 2d 21, 24. We accept the proposition that the legislature enacted R.C. 2305.11(B) in response to a perceived crisis in the area of malpractice insurance.

The right-to-a-remedy provision of Section 16, Article I does not require the analysis of rational-basis that is used to decide due process or equal protection arguments against the constitutionality of legislation. The fault in R.C. 2305.11(B) is that it denies legal remedy to one who has suffered bodily injury. This the legislature may not do even if it acted with a rational basis.[7]

Further, the legislature when it adopted R.C. 2305.11(B) did not specifically address the situation of one who did not know of his or her injury. The statute was adopted prior to our decision in *Oliver* v. *Kaiser Community Health Found.* (1983), 5 Ohio St. 3d 111, 5 OBR 247, 449 N.E. 2d 438; thus, presumably the intent of the legislature was to put a limit on the rule that a malpractice action could be filed any time up to one year after the termination of the physician-patient relationship. The physician-patient relationship could continue for many years after the act of malpractice. Where a plaintiff has allowed more than one year to run following discovery of injury, R.C. 2305.11(B) might pass constitutional muster as a limitation on the further time extension accorded by a continuing physician-patient relationship. However, that issue is not before us and we reserve our opinion thereon.

---

[6] In *Schwan, supra,* we overruled *Vance* v. *St. Vincent Hospital* (1980), 64 Ohio St. 2d 36, 18 O.O. 3d 216, 414 N.E. 2d 406. In *Vance,* this court upheld R.C. 2305.11(B) as applied to a minor who had discovered her injury. It is noteworthy that the court in *Vance* recognized that denial of a remedy to one who was unaware of her injury might invoke constitutional infirmities even though none arose from the fact that the plaintiff was a minor. The court expressed no opinion as to the constitutionality of R.C. 2305.11 when applied to those without knowledge of their injury.

[7] Whether R.C. 2305.11(B) violates the Equal Protection or Due Process Clauses of the Fourteenth Amendment involves a determination of whether the legislature acted with a rational basis. In other jurisdictions, statutes of repose, having features similar to ours, have been analyzed on due process and equal protection grounds. The courts are divided on the question of whether due process and equal protection arguments render a statute of repose unconstitutional. See Comment, Due Process Challenges to Statutes of Repose (1986), 40 Sw. L. J. 997; Note, The Constitutionality of Statutes of Repose: Federalism Reigns (1985), 38 Vand. L. Rev. 627. An extended analysis of the fair-and-substantial-relation test as applied to a malpractice statute of repose is contained in *Carson* v. *Maurer* (N.H. 1980), 424 A. 2d 825, and in *Kenyon* v. *Hammer* (1984), 142 Ariz. 69, 688 P. 2d 961.

## IV

Our determination rests upon denial of remedy. We do not suggest that causes of action as they existed at common law or the rules that govern such causes are immune from legislative attention. As this court said in *Fassig* v. *State, ex rel. Turner* (1917), 95 Ohio St. 232, 248, 116 N.E. 104, 108:

"No one has a vested right in rules of the common law. Rights of property vested under the common law cannot be taken away without due process, but the law itself as a rule of conduct may be changed at the will of the legislature *unless prevented by constitutional limitations.* The great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to new circumstances. *Mondou* v. *N.Y., N. H. & H. Rd. Co.,* 223 U.S. 1; *Munn* v. *Illinois,* 94 U.S. 113; *Martin* v. *P. & L. E. Rd. Co.,* 203 U.S. 284; and *Western Union Tel. Co.* v. *Commercial Milling Co.,* 218 U.S. 406.

"Our constitutions were made in the contemplation that new necessities would arise with changing conditions of society." (Emphasis added.) See, also, *Schenkolewski* v. *Metroparks System* (1981), 67 Ohio St. 2d 31, 21 O.O. 3d 19, 426 N.E. 2d 784.[8]

As noted, the legislature, in enacting R.C. 2305.11(B), has made no effort to alter the substantive law of malpractice. Rather, the legislature has sought to limit the time in which malpractice actions may be brought and it has done so in a manner which denies to some people (including the appellant herein) a remedy for injury to their person.

Accordingly, we reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings in accordance with our opinion herein.

*Judgment reversed*
*and cause remanded.*

SWEENEY, Acting C.J., LOCHER and DOUGLAS, JJ., concur.

MARKUS and WRIGHT, JJ., concur in judgment only and dissent in part.

HOLMES, J., concurs in judgment, but dissents to the syllabus law and the opinion.

SWEENEY, J., sitting for MOYER, C.J.

MARKUS, J., of the Eighth Appellate District, sitting for SWEENEY, J.

---

[8] Common-law remedies were extinguished by the adoption of state workers' compensation statutes. In Ohio the first of such statutes was upheld against attack under Section 16, Article I on the ground that the worker consented to operate under this law and received substantial protections and privileges from the State Insurance Fund in return for relinquishment of his right of action for negligence. *State, ex rel. Yaple,* v. *Creamer* (1912), 85 Ohio St. 349, 399-400, 97 N.E. 602, 607. The issue with regard to workers' compensation was subsequently resolved by the adoption of Section 35, Article II.

The Ohio Marketable Title Act, R.C. 5301.47 through 5301.56, destroys certain ancient property interests and removes remedies used to enforce those ancient interests. It has been noted that such would not have been tolerated if no method of preserving a remedy had been provided. Smith, The New Marketable Title Act (1961), 22 Ohio St. L. J. 712, 717. As to the constitutionality of marketable title Acts generally, see Simes & Taylor, Improvement of Conveyancing by Legislation (1960) 253-273.

Douglas, J., concurring. I concur in Justice Herbert Brown's well-reasoned majority opinion. I heartily agree with today's holding that R.C. 2305.11(B) violates the Ohio Constitution.

I have previously expressed my firm belief that R.C. 2305.11(B) is unconstitutional as applied to both minors and adults, on the basis that it offends the access-to-the-courts provision of Section 16, Article I of the Ohio Constitution. See *Mominee* v. *Scherbarth* (1986), 28 Ohio St. 3d 270, 290-293, 28 OBR 346, 363-365, 503 N.E. 2d 717, 732-734 (Douglas, J., concurring). There, I stated that "[s]ince the bottom-line effect of this statute of repose, R.C. 2305.11(B), is to abolish a common-law right or action which existed at the time the Constitution was adopted, and since the legislature provided no reasonable alternative remedy or substitute for the one which it has abrogated, this court must hold that R.C. 2305.11(B) is violative of Section 16, Article I of the Ohio Constitution and is, therefore, unconstitutional. * * *" *Id.* at 293, 28 OBR at 365, 503 N.E. 2d at 734.

In addition, I write separately to reiterate a concern I recently expressed in my dissent to *Hoffman* v. *Davidson* (1987), 31 Ohio St. 3d 60, 63-64, 31 OBR 165, 168-169, 508 N.E. 2d 958, 961-962. Several statements in today's majority decision imply that it is the date of the discovery of the *injury* which marks the accrual of a cause of action in medical malpractice. This implication is inaccurate. It is the discovery of the *malpractice which caused the injury,* not just of the injury itself, which tolls the statute. As stated in my dissent to *Hoffman, supra,*

"* * * in many cases the injury will be immediately obvious, but the patient will have no reason to suspect that the injury was actually caused by malpractice until after the limitations period has passed. * * *" *Id.* at 63, 31 OBR at 168, 508 N.E. 2d at 961. See, also, *Frysinger* v. *Leech* (1987), 32 Ohio St. 3d 38, 44, 512 N.E. 2d 337, 342-343 (Douglas, J., concurring in judgment).

A cause of action in medical malpractice does not arise from mere injury alone. The injury must be the result of malpractice. Thus, the cause of action cannot accrue until the patient discovers that malpractice has occurred, and the statute of limitations does not commence to run until such a discovery transpires, or reasonably should have transpired.

Sweeney, J., concurs in the foregoing concurring opinion.

Wright, J., concurring in judgment only and dissenting in part. Today, a majority of this court attributes a meaning to Section 16, Article I of the Ohio Constitution not heretofore recognized in the one hundred thirty-six year history of the provision.[9] This result is most certainly not supported by the language of the provision itself. Since today's holding effectively rewrites a provision of the Ohio Constitution, I am compelled to dissent.

R.C. 2305.11 provides, in pertinent part:

"(A) An action for * * * malpractice, including an action for malpractice against a physician, podiatrist, [or a] hospital * * *, shall be brought within one year after the cause thereof accrued * * *.

---

[9] Section 16, Article I was made a part of the Ohio Constitution as adopted in March 1851. However, the identical guarantee existed in the version of the state Constitution adopted in 1802, under Section 7, Article VIII.

"* * *

"(B) In no event shall any medical claim against a physician, podiatrist, or a hospital * * * be brought more than four years after the act or omission constituting the alleged malpractice occurred. * * *"

This clearcut statement was and is supported by sound public policy considerations developed by the Ohio General Assembly.[10]

Appellant's constitutional attack on R.C. 2305.11(B) is predicated upon due process considerations under Section 16, Article I. Nowhere does appellant mention in his brief that R.C. 2305.11(B) somehow violates the "open court" provision. It will indeed come as a surprise to the litigants in the case at bar that this court, without prompting from either party, has gratuitously and *sua sponte* raised and decided this case on the "open court" theory.

We must remain cognizant that "[a] regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality. * * * [We have consistently] held enactments of the General Assembly to be constitutional unless such enactments are clearly unconstitutional beyond a reasonable doubt." *State, ex rel. Dickman,* v. *Defenbacher* (1955), 164 Ohio St. 142, 147, 57 O.O. 134, 137, 128 N.E. 2d 59, 63. See, also, *Benevolent Assn.* v. *Parma* (1980), 61 Ohio St. 2d 375, 15 O.O. 3d 450, 402 N.E. 2d 519; *Roosevelt Properties Co.* v. *Kinney* (1984), 12 Ohio St. 3d 7, 12 OBR 6, 465 N.E. 2d 421. In addition, it is axiomatic that this court will not pass upon the constitutionality of a statute unless it is "absolutely necessary" to the resolution of the case or controversy. *State, ex rel. Hofstetter,* v. *Kronk* (1969), 20 Ohio St. 2d 117, 119, 49 O.O. 2d 440, 441, 254 N.E. 2d 15, 17.[11]

Despite this wealth of authority, the majority refuses to acknowledge that *Deskins* v. *Young* (1986), 26 Ohio St. 3d 8, 26 OBR 7, 496 N.E. 2d 897, is on all fours with the subject cause, thus making it unnecessary to decide this case under new constitutional principles.[12] Moreover, even if the constitu-

---

[10] See *Mominee* v. *Scherbarth* (1986), 28 Ohio St. 3d 270, 295-299, 28 OBR 346, 368-371, 503 N.E. 2d 717, 736-740 (Wright, J., dissenting).

[11] See, also, *Anderson* v. *Jacobs* (1981), 68 Ohio St. 2d 67, 22 O.O. 3d 268, 428 N.E. 2d 419; *Euclid* v. *Heaton* (1968), 15 Ohio St. 2d 65, 44 O.O. 2d 50, 238 N.E. 2d 790; *Greenhills Home Owners Corp.* v. *Greenhills* (1966), 5 Ohio St. 2d 207, 34 O.O. 2d 420, 215 N.E. 2d 403, paragraph one of the syllabus; *Cuyahoga Falls* v. *Bowers* (1984), 9 Ohio St. 3d 148, 151, 9 OBR 438, 441, 459 N.E. 2d 532, 535; *State* v. *Weissman* (1982), 69 Ohio St. 2d 564, 566, 23 O.O. 3d 477, 479, 433 N.E. 2d 216, 217; *Strongsville* v. *McPhee* (1944), 142 Ohio St. 534, 27 O.O. 466, 53 N.E. 2d 522, paragraph three of the syllabus; *Rucker* v. *State* (1928), 119 Ohio St. 189, 162 N.E. 802, paragraph one of the syllabus.

[12] In *Deskins, supra,* the plaintiff underwent surgery on or about June 22, 1971. According to this court's statement of the case, approximately twelve years later, in June 1983, the plaintiff underwent a second surgery, at which time it was discovered that the initial surgery had not been fully completed. Until this time the plaintiff could not have been aware that the surgery may have been negligently performed. When the plaintiff filed his complaint in November 1984 against the defendant-surgeon who performed the surgery in 1971, the defendant sought summary judgment arguing, *inter alia,* that the claim was time-barred pursuant to R.C. 2305.11(B), which became effective July 28, 1975. Although the lower courts agreed that the complaint was time-barred, this court reversed, stating: "* * * [T]he retroactive application of R.C. 2305.11(B)

tionality of R.C. 2305.11(B) was ripe for our determination, I am unable to accept the contention that this statute somehow violates the "open court" provision of Section 16, Article I of the Ohio Constitution. That section provides:

"All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."

Today, the majority *ex cathedra* revises this provision to read that "[a]ll courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy." The obvious flaw contained within the majority's reasoning is that this section of our Constitution only affords access to the courts to seek remedies *by due course of law,* not access to seek any and all remedies for perceived injuries. Stated otherwise, even appellant concedes that the "due course of law" provision of Section 16, Article I, is functionally equivalent with "due process of law" under the federal Constitution, and *nothing more.* In view of the fact that at least three members of today's majority have previously agreed that the four-year statute of repose within R.C. 2305.11(B) affords plaintiffs a reasonable time in which to seek redress for alleged malpractice, and hence the statute does not violate due

process of law (see, *e.g., Opalko* v. *Marymount Hospital, Inc.* [1984], 9 Ohio St. 3d 63, 9 OBR 267, 458 N.E. 2d 847, Sweeney and Locher, JJ., and *Mominee* v. *Scherbarth* [1986], 28 Ohio St. 3d 270, 290-291, 28 OBR 346, 363-364, 503 N.E. 2d 717, 732-733, Douglas, J. concurring), it is not surprising that the majority seeks new avenues with which to declare this enactment constitutionally infirm.

In my view, the majority's initial error lies in its misreading of *Lafferty* v. *Shinn* (1882), 38 Ohio St. 46. The majority states that in *Lafferty* the court "recited Section 16, Article I and said that '* * * it is not within the power of the legislature to abridge the period within which an *existing right* may be so asserted as that there shall not remain a reasonable time within which an action may be commenced.' " (Emphasis added.) However, even a cursory examination of *Lafferty* demonstrates that when the court referred to the abridgment of existing or vested rights, it did so with a reliance upon Section 28, Article II (prohibiting the passage of retroactive laws), and *not* Section 16, Article I. Thus, the passage in *Lafferty* relied upon by the majority stands for the well-established principle that the General Assembly may not retroactively destroy a vested right (Section 28, Article II), *not* that the legislature is precluded from modifying a former common-law right.[13]

---

to a cause of action arising from an act of malpractice occurring prior to its effective date, where the malpractice could not reasonably have been discovered within four years, would totally eliminate appellant's substantive right in her cause of action without affording her a reasonable time within which to enforce that right. Such an application contravenes the proscription against retroactive laws contained in Section 28, Article II of the Ohio Con-

stitution. Therefore, R.C. 2305.11(B) will not operate to bar appellant's claim." *Id.* at 10, 26 OBR at 8, 496 N.E. 2d at 898. Similarly, in the case at bar, the plaintiff underwent a series of stapedectomies and revised stapedectomies between March 1973 and March 1974, which, according to the plaintiff, were negligently performed but not discoverable until April 1984.

[13] As was stated by the court in

The majority then compounds the error from its misreading of *Lafferty* when it fails to recognize the distinction between vested and nonvested property rights. Where an injury occurs giving rise to a *recognized cause of action,* that cause of action becomes a *vested property right* entitled to due process protections. Accord *Gibbes* v. *Zimmerman* (1933), 291 U.S. 326. Conversely, if the injury has yet to occur, the cause of action cannot be said to have vested and due process will not prevent the abolition of same in the interest of appropriate legislative objectives. *Silver* v. *Silver* (1929), 280 U.S. 117, 122.[14]

Not every injury sustained necessarily enjoys redress in the courts. Insofar as this principle is applicable in Ohio, Judge Kennedy recently observed in *Hartford Fire Ins. Co.* v. *Lawrence, Dykes, Goodenberger, Bower & Clancy* (C.A. 6, 1984), 740 F. 2d 1362, 1370:

"The Ohio courts have never held that the 'open court' provision in its constitution prevents the legislature from abolishing a cause of action. In *Lafferty* v. *Shinn,* 38 Ohio St. 46, 48 (1882), the Ohio Supreme Court stated, that, under the provision, 'it is not within the power of the legislature to abridge the period within which an existing right may be so asserted as that there shall not remain a reasonable time within which an action may be commenced.' This reasoning, however,

---

*Gallegher* v. *Davis* (1936), 37 Del. [Super.] 380, 391, 183 A. 620, 624:

"* * * [N]o one has a vested interest in any rule of the common law. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, within constitutional limits, may be changed at the will of the legislature. The great office of statutes is to remedy defects in the common law as they develop, and to adapt it to the change of time and circumstance. * * * Negligence is merely the disregard of some duty imposed by law; and the nature and extent of the duty may be modified by legislation, with a corresponding change in the test of negligence, * * * and, as said by the * * * [United States Supreme Court] with respect to the *Fourteenth Amendment,* in *Silver* v. *Silver, supra,* when that case was before it (280 U.S. 117, [122] * * *).

" 'We need not * * * elaborate the rule that the *Constitution* does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object.' " See, also, *Fassig* v. *State, ex rel. Turner* (1917), 95 Ohio St. 232, 248, 116 N.E. 104, 108; *Sidle* v. *Majors* (1976), 264 Ind. 206, 209, 341 N.E. 2d 763, 766; *Anderson* v. *Wagner* (Miss. 1981), 402 So. 2d 320, 322.

To hold otherwise would "* * * encroach upon the Legislature's ability to guide the development of the law * * * simply because the rule enacted by the Legislature rejects some cause of action currently preferred by the courts * * * [and] would * * * place * * * certain non-constitutional decisions of courts above all change except by constitutional amendment." *Freezer Storage, Inc.* v. *Armstrong Cork Co.* (1978), 476 Pa. 270, 281, 382 A. 2d 715, 721.

[14] Cf. *Rosenberg* v. *North Bergen* (1972), 61 N.J. 190, 199-200, 293 A. 2d 662, 667, wherein the court reasoned:

"* * * [The statute] does not bar a cause of action [based upon a vested right]; its effect, rather, is to prevent what might otherwise be a cause of action, from ever arising. Thus injury occurring more than ten years after the negligent act allegedly responsible for the harm, forms no basis for recovery. The injured party literally has *no* cause of action. The harm that has been done is *damnum absque injuria* — a wrong for which the law affords no redress. The function of the statute is thus rather to define substantive rights than to alter or modify a remedy. The Legislature is entirely at liberty to create new rights or abolish old ones as long as no vested right is disturbed."

applies, only to 'existing' rights; state law determines when rights exist. Section 16 guarantees a 'remedy by due course of law' for 'an injury done,' but state law determines what injuries are recognized and what remedies are available. *See Building Service & Maintenance Union Local No. 47* v. *St. Lukes Hospital,* 11 Ohio Misc. 218, 227 N.E. 2d 265, 271 (C.P. Cuyahoga Cty. 1967).

"The Ohio Supreme Court has long held that causes of action may be abolished:

"[']No one has a vested right in rules of the common law. Rights of property vested under the common law cannot be taken away without due process, but the law itself as a rule of conduct may be changed at the will of the legislature unless prevented by constitutional limitations. The great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to new circumstances.[']

"*Fassig* v. *State ex rel. Turner,* 95 Ohio St. 232, 248, 116 N.E. 104 (1917). More recently, the Court repeated, 'There is no question that the legislative branch of the government, unless prohibited by constitutional limita-

tions, may modify or entirely abolish common-law actions and defenses,' *Thompson* v. *Ford,* 164 Ohio St. 74, 79, 128 N.E. 2d 111 (1955)."

The majority fails to discuss any abolition of a vested right, so it proceeds to find under Section 16, Article I, a right of access to the courts for virtually any claim. However, it is clear to me that unless the right is vested, or the claim involves a *fundamental right,* access to the courts may be limited and/or regulated by the General Assembly if a rational basis exists for the limitation. Accord *Bounds* v. *Smith* (1977), 430 U.S. 817; *United States* v. *Kras* (1973), 409 U.S. 434; *Boddie* v. *Connecticut* (1971), 401 U.S. 371. Nothing in Section 16, Article I suggests otherwise.[15]

I would stress that the question presented this day is not novel, since an examination of decisions from this and other jurisdictions demonstrates that various statutes of repose have come under attack under the precise theory advanced by the majority. Although a few jurisdictions have found similar statutes violative of constitutional provisions,[16] the vast majority of cases have concluded that statutes of repose do not violate "open

---

[15] In an attempt to rationalize today's holding with the enactment of R.C. 2305.29, wherein the General Assembly abolished the common-law causes of action for criminal conversation and alienation of affections, the majority reasons that the enactment of R.C. 2305.29 is not a violation of Section 16, Article I, "because the denial of remedy did not reach injury to *person, property,* or *reputation.*" (Emphasis *sic.*) It reaches this innovative result, purportedly on the basis of *Haskins* v. *Bias* (1981), 2 Ohio App. 3d 297, 2 OBR 329, 441 N.E. 2d 842, a court of appeals opinion from Lucas County. Interestingly, the *Haskins* court stressed that Section 16, Article I only provides remedies for " 'wrongs that are

recognized by law.' " *Id.* at 299, 2 OBR at 331, 441 N.E. 2d at 844. Since suits involving alienation of affections had come under severe criticism and were eventually abolished by R.C. 2305.29, the court concluded that the common-law action no longer represented an interest in land, goods, person, or reputation "such as may be recognized at law." *Id.* For the majority to simply conclude that an action alleging alienation of affections did not reach injury to person or reputation is nothing less than judicial legerdemain.

[16] See, *e.g., Overland Constr. Co.* v. *Sirmons* (Fla. 1979), 369 So. 2d 572; *Saylor* v. *Hall* (Ky. 1973), 497 S.W. 2d 218.

court" provisions of state constitutions.[17]

Without question, today's holding creates a constitutional dilemma of severe proportions. This court has informed the General Assembly it has no power to meet what it perceives as an epidemic crisis with responsive legislation. Who would have imagined that when *Oliver* v. *Kaiser Community Health Found.* (1983), 5 Ohio St. 3d 111, 5 OBR 247, 449 N.E. 2d 438, was decided that the groundwork was being laid for declaring all statutes of repose constitutionally infirm?

Is an undiscovered claim for damages a constitutional right inviolate against legislative limitation as to time constraints? Does Section 16, Article I forever provide a remedy to an as yet undiscovered claim? To suggest, as does the majority, that every common-law right is indelibly embedded in the Ohio Constitution and that subjective awareness of a potential claim is required prior to the abolishment of a cause of action is sheer legal fiction. Nevertheless, because the majority disagrees with the time constraints under R.C. 2305.11(B), it has, under the guise of judicial interpretation, abrogated the function of the General Assembly and the electorate by amending the Constitution of Ohio by judicial fiat.

The empathy that all of us have for one suffering illness or injury has fostered a sense of irresponsibility born of sympathy, since the majority tacitly concedes that there are sound public policy considerations for a statute of repose of reasonable duration. The present predicament that the medical profession and health care facilities have in obtaining malpractice insurance· at a reasonable cost will rapidly spread to other professions. Whether one is attracted to the concept or not, modern-day tort liability is premised upon spreading the cost of monetary losses through the medium of insurance. Insurance companies are not in business to sustain losses and thus they will not accept a risk where their exposure is incalculable on the basis of actuarial analysis. Today we have simply taken the insurance industry "out of play" in many areas of professional malpractice. Suffice it to say, I am deeply disappointed with the acumen and foresight of my brethren in the majority.

Thus I vigorously dissent from the rationale espoused by the majority.

MARKUS and HOLMES, JJ., concur in the foregoing opinion.

HOLMES, J., concurring in judgment, but dissenting to the syllabus law and the opinion.

---

[17] See, *e.g., Twin Falls Clinic & Hospital Building Corp.* v. *Hamill* (1982), 103 Idaho 19, 644 P. 2d 341; *Beecher* v. *White* (Ind. App. 1983), 447 N.E. 2d 622; *Burmaster* v. *Gravity Drainage District No. 2* (La. 1978), 366 So. 2d 1381; *Anderson* v. *Wagner* (Miss. 1981), 402 So. 2d 320; *McMacken* v. *State* (S.D. 1982), 320 N.W. 2d 131; *Reeves* v. *Ille Electric Co.* (1976), 170 Mont. 104, 551 P. 2d 647; *Lamb* v. *Wedgewood South Corp.* (1983), 308 N.C. 419, 302 S.E. 2d 868; *Hargett* v. *Limberg* (D. Utah 1984), 598 F. Supp. 152; *Dunn* v. *St. Francis Hosp., Inc.* (Del. 1979), 401 A. 2d 77; *Valentine* v. *Thomas* (La. App. 1983), 433 So. 2d 289, certiorari denied (1983), 440 So. 2d 728; *Colton* v. *Dewey* (1982), 212 Neb. 126, 321 N.W. 2d 913; *Walker* v. *Santos* (1984), 70 N.C. App. 623, 320 S.E. 2d 407; *Harrison* v. *Schrader* (Tenn. 1978), 569 S.W. 2d 822; *Dague* v. *Piper Aircraft Corp.* (1981), 275 Ind. 520, 418 N.E. 2d 207; *Harmon* v. *Angus R. Jessup Assoc.* (1981 Tenn.), 619 S.W. 2d 522; *Stephens* v. *Snyder Clinic Assoc.* (1981), 230 Kan. 115, 631 P. 2d 222; *Hill* v. *Fitzgerald* (1985), 304 Md. 689, 501 A. 2d 27.

I am in agreement with the judgment of the majority here because it comports with this court's holding in *Deskins* v. *Young* (1986), 26 Ohio St. 3d 8, 26 OBR 7, 496 N.E. 2d 897. There we held that R.C. 2305.11(B) would not bar a claim, as here, which arose prior to July 28, 1975, but was discovered subsequent to the effective date of the statute. Although I strongly dissented in *Deskins,* such is unfortunately the law of Ohio and, based upon the principle of *stare decisis,* I shall adhere to that law as applied to this case.

As to the syllabus law in the present case and the body of the majority opinion, I adopt in the main what has been stated in dissent by Justice Wright. I wish to additionally point out that I have previously written on my sentiments as to the constitutionality of the four-year statute of repose as contained in R.C. 2305.11(B). As early as my commentary in *Oliver* v. *Kaiser*

*Community Health Found.* (1983), 5 Ohio St. 3d 111, 118, 5 OBR 247, 253, 449 N.E. 2d 438, 444 (Holmes, J., dissenting in part), I concluded that the discovery rule was meritorious for Ohio, as it would apply to R.C. 2305.11(A). However, as I then stated, the public policy of the state had been expressed by the General Assembly as it related to the need for a statute of repose in medical malpractice actions and had resulted in enactment of R.C. 2305.11(B). This act of the legislative body of Ohio was carried out after a specific pronouncement of a medical malpractice crisis in this state, and upon a multitude of legislative hearings declaring this to be the public policy of Ohio. This court, in determining that such legislation is unconstitutional, not only carries out a needless task, but it sets itself apart as a super legislative body usurping the very constitutional prerogatives of the General Assembly.