David DAY, et al., Plaintiffs,

v.

NLO, INC., et al., Defendants.

No. C–1–90–67.

United States District Court,
S.D. Ohio, W.D.

March 4, 1992.

Thomas Joseph Kircher, Kircher, Robinson, Cook, Newman & Welch, Allen Paul Grunes, Paul M. De Marco, Waite, Schneider, Bayless & Chesley Co., Cincinnati, Ohio, for plaintiffs David Day, John Fitzgerald, Herbert L. Kelly, Floyd Davis, William E. Frey, Hillery Webb, Sr., Julia Virginia Sansone, Shirley Skiles, Milford W. Skiles, Ralph Jones, Elmer Hust, Fernald Atomic Trades and Labor Council AFL–CIO, Metal Trades Div. AFL–CIO, Building and Const. Trades Dept. AFL–CIO, Greater Cincinnati Building and Const. Trades Council AFL–CIO and Indus. Union Depart.

William Howard Hawkins, II, Frost & Jacobs, John Stephen Wirthlin, Sr., Beirne & Wirthlin, Cincinnati, Ohio, Herbert L. Fenster, McKenna, Conner & Cuneo, Washington, D.C., David M. Bernick, Kirkland & Ellis, Chicago, Ill., for defendants NL Industries Inc. and NLO Inc.

ORDER DENYING THE MOTION · OF THE MOVING PLAINTIFFS FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR FOR A NEW TRIAL

SPIEGEL, District Judge.

Certain plaintiffs in this action (David Day, John Fitzgerald, Herbert Kelly, Hillery Webb, William Frey, Ralph Jones, and Julia Sansone [1]) have moved for judgment notwithstanding the verdict [2] or, in the alternative, for a new trial (doc. 255). The defendants oppose the motion (doc. 258), and the plaintiffs have responded (doc. 263). For the reasons set forth below, the moving plaintiffs' motion for judgment notwithstanding the verdict or for a new trial is hereby denied.

## BACKGROUND

The defendants formerly operated the Feed Materials Production Center ("FMPC") located in Fernald, Ohio. The individual plaintiffs in this matter are former FMPC employees, spouses of former FMPC employees, and independent contractors who formerly performed work at the FMPC. The plaintiffs claim that the defendants operated the FMPC in such a way as to negligently and intentionally expose the plaintiffs to dangerous levels of radioactive and hazardous materials. As a result of this alleged exposure, the plaintiffs contend that their personal property has been damaged, and that they now suffer severe emotional distress in the form of increased fear of cancer.

The defendants moved to dismiss the complaint as barred by the applicable statute of limitations. Concluding that there were factual issues surrounding plaintiffs' knowledge of the alleged overexposure, this Court ordered the parties to try the statute of limitations issue to a jury.

The statute of limitations trial commenced on September 16, 1991. For approximately seven weeks, the parties examined numerous witnesses and presented extensive evidence to the jury. At the charging conference, counsel for the plaintiffs and counsel for the defendants vigorously

---

**1.** Ms. Sansone joins in the motion only with respect to her claim for property damage.

**2.** Rule 50 of the Federal Rules of Civil Procedure was amended effective December 1, 1991. What was formerly termed a motion for judgment notwithstanding the verdict is now referred to as a renewed motion for judgment as a matter of law. Fed.R.Civ.P. 50(b) (1991 rev.). However, the plaintiffs moved for judgment notwithstanding the verdict prior to the effective date of the new rule. Therefore, to maintain clarity, the Court will continue to refer to judgment notwithstanding the verdict throughout this opinion.

debated the instruction regarding when the statute of limitations began to run. The Court ultimately concluded that the charge would provide in part, "The limitations period begins to run when a plaintiff knows or, by the exercise of reasonable diligence should have known, that he may have been injured by the wrongful conduct of the defendants." Jury Instructions at 14.

Counsel for the plaintiffs strenuously objected to the inclusion of what has come to be called the "may instruction." Counsel's objections were overruled. The plaintiffs then filed a motion for reconsideration of proposed jury instructions (doc. 243). That motion was denied.

Following closing arguments, the Court charged the jury, and presented each juror with a copy of the eighteen-page instruction. The charge given contained the "may instruction."

After extensive deliberation, the jury concluded that the claims of David Day, John Fitzgerald, Herbert Kelly, Hillery Webb, William Frey, and Ralph Jones were barred by the statute of limitations. In addition, they found that Julia Sansone's property damage claim was barred. Those plaintiffs then filed the instant motion for judgment notwithstanding the verdict or for a new trial pursuant to Rule 50(b) and Rule 59 of the Federal Rules of Civil Procedure.

### THE "MAY INSTRUCTION"

■ The moving plaintiffs first contend that the jury's verdict must be overturned because the "may instruction" was improper. Although "substantial and prejudicial error in a single jury instruction" may be cause to overturn the instruction, a jury instruction need only "state[ ] the law with substantial accuracy and fairly submit[ ] the issues to the jury" to be proper. *Clarksville–Montgomery County School System v. United States Gypsum Co.*, 925 F.2d 993, 1003 (6th Cir.1991), *reh'g denied* (6th Cir.1991).

#### *The "May Instruction" is Consistent with the Ohio Discovery Rule*

■ In *Yung v. Raymark Industries, Inc.*, 789 F.2d 397 (6th Cir.1986), the court

stated that pursuant to the Ohio discovery rule, "[T]he statute of limitations will not begin to run until after the party learns of his injury or with reasonable diligence should have been aware of his injury." *Id.* at 400 (citing *O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84, 88–90, 447 N.E.2d 727 (1983)). In *Yung,* the district court conducted a separate trial on the statute of limitations issue. *Yung v. Raymark Industries, Inc.*, 789 F.2d at 397. The defendants claimed not only that Mr. Yung suffered a lung injury, but that he had been informed of the injury several years before he filed suit. *Id.* at 398. Consistent with that position, the defendants presented evidence regarding the early diagnosis of Mr. Yung's injury at the statute of limitations trial. *Id.* Because both parties agreed that Mr. Yung suffered an identifiable physical injury, the issue whether the defendants were required to prove Mr. Yung was injured was not before the court.

Accordingly, the Court's decision in *Yung* has little application to the instant case. Here, neither the plaintiffs nor the defendants assert that the plaintiffs suffered an identifiable physical injury. The plaintiffs contend that they suffer only emotional distress and property damage. The defendants deny that the plaintiffs are injured at all. Under these circumstances, it would be unjust to require the defendants to prove that the plaintiffs were actually injured.

In addition, the plaintiffs claim that they suffer emotional distress after allegedly discovering that they had been overexposed to radioactive materials. The plaintiffs acknowledge that "mental distress is dependent on what a person knows and when he knows it." Doc. 255 at 8. Therefore, in this case, the plaintiffs had notice of their alleged injury when they knew or should have known of the alleged overexposure.

For these reasons, the Court properly charged the jury using the "may instruction." *See Russo v. Ascher,* 76 Md.App. 465, 545 A.2d 714, 716 (1988) (After acknowledging that Maryland recognizes the discovery rule, the Court concluded that

"[t]he dispositive issue is when was the appellant put on notice that she *may have been injured.*" (emphasis added)); *see also Licka v. William A. Sales, Ltd.,* 70 Ill. App.3d 929, 27 Ill.Dec. 212, 217, 388 N.E.2d 1261, 1266 (1979) (The court concluded that "the limitations period did not begin to run until plaintiff knew or should have known that he *may have been injured* as a result of defendant's wrongful conduct." (emphasis added)).

### The "May Instruction" Did Not Permit the Defendants to Utilize an Assumption of Risk Defense

■ The plaintiffs next contend that the "may instruction" actually permitted the defendants to utilize an assumption of risk defense rather than a statute of limitations defense. According to the plaintiffs, the "may instruction" enabled the jury to conclude that the plaintiffs' general knowledge of the risks of working with radiation was sufficient to trigger the statute of limitations. We disagree.

First, assumption of the risk is a liability concept that was neither raised nor discussed at any time during the limitations trial. It is highly unlikely that the jurors considered that concept under these circumstances.

Second, the "may instruction" provided, "The limitations period begins to run when a plaintiff knows or, by the exercise of reasonable diligence should have known, that he may have been injured *by the wrongful conduct of the defendants.*" Jury Instructions at 14 (emphasis added). The instruction specifically links the plaintiffs' alleged injury to *wrongful* conduct of the defendants. Simply operating a uranium processing plant is not *wrongful* conduct. Accordingly, mere knowledge of the general risks of working near radioactive materials is insufficient to trigger the statute of limitations under the jury instruction given.

Third, the plaintiffs' reliance on a newspaper account of an interview with juror Harten is misplaced. Juror Harten simply stated, "If they were in the union, they should have or could have known." Cincinnati Enquirer, November 5, 1991, p. B–3. Although the plaintiffs imply that juror Harten's statement refers to knowledge of the general risks of working with hazardous materials, it more likely refers to the information provided to the union. The defendants presented substantial testimony that information regarding exposure and employee health and safety was regularly provided to the union.[3]

### The "May Instruction" Did Not Violation the Ohio Constitution

■ The plaintiffs next contend that the "may instruction" was "contrary to the applicable 'delayed damage' decisions of the Ohio Supreme Court, as well as Article I, Section 16, of the Ohio Constitution." Doc. 255 at 15 (original in all capital letters). Again, we disagree.

Article I, Section 16 of the Ohio Constitution provides, "All courts shall be open, and every person, for an injury done to him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." Pursuant to this constitutional provision, the Ohio Supreme Court has determined that the legislature may not enact an unreasonable statute of limitations nor may it "deprive one of a right before it accrues." *Hardy v. VerMeulen,* 32 Ohio St.3d 45, 47, 512 N.E.2d 626 (1987), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1029, 98 L.Ed.2d 993 (1988); *See also Kennedy v. Cumberland Engineering Co.,* 471 A.2d 195, 201 (R.I.1984) ("Except in topsy-turvy land, you can't die before you are conceived, or be divorced before ever you marry, or harvest a crop never planted, or burn

---

3. In reviewing a motion for judgment notwithstanding the verdict, the Court "must view the evidence in a light most favorable to the party against whom the motion is made." *Yung v. Raymark Industries, Inc.,* 789 F.2d 397, 399 (6th Cir.1986). "If there is 'substantial evidence from which the jury could find in favor of the party against whom the motion is made,' the motion should not be granted." *Id.* (quoting *Bellamy v. Bradley,* 729 F.2d 416, 418 (6th Cir.), *cert. denied,* 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984)).

down a house never built, or miss a train running on a non-existent railroad. For substantially similar reasons, it has always heretofore been accepted, as a sort of logical 'axiom,' that a statute of limitations does not begin to run against a cause of action before that cause of action exists, i.e., before a judicial remedy is available to the plaintiff."). In *Hardy*, the court concluded that the statute in question violated Article I, Section 16 of the Ohio Constitution to the extent that it barred claims of plaintiffs "who did not know or could not reasonably have known of their injuries...." *Hardy v. VerMeulen*, 32 Ohio St.3d at 47, 512 N.E.2d 626.

While these cases provide an accurate and even entertaining statement of the law, they have no application to the matter at hand. The plaintiffs in this case were not denied a right to a remedy. This Court concluded, at plaintiffs' urging, that the statute of limitations in this matter did not begin to run until the plaintiffs knew or, by the exercise of reasonable diligence should have known, of the alleged overexposure to radioactive materials. Therefore, regardless of when the alleged overexposure occurred, the statute of limitations did not begin to run until the plaintiffs were on notice of such exposure.

The Court permitted both the plaintiffs and the defendants to present extensive evidence to show when the plaintiffs were on such notice. For example, the parties produced evidence regarding the 1985 strike and contamination controversy, the extensive news coverage regarding alleged overexposure (including a five-part television series that aired in 1985), and numerous claims of misconduct by NLO. The jury carefully considered the evidence presented, and concluded that some of the plaintiffs were on notice (either actual or constructive) more than two years (for property damage claims) or four years (for emotional distress claims) before the complaint was filed. The record amply supports the jury's determination. Accordingly, those claims are barred by the statute of limitations.

## The Court's Final Instruction Cured Any Error in its Preliminary Instruction

The plaintiffs next contend that the Court's final instruction was inconsistent with the Court's preliminary instruction, and this inconsistency requires that the verdict be overturned. Again, we disagree.

In its preliminary instruction, this Court stated, "Now Plaintiffs' cause of action accrues when first the plaintiff knows that he or she has been injured, and second, the plaintiff known or should know facts sufficient to place a reasonable person on inquiry that his or her injury was caused by some wrongdoing of the defendants." Trial Transcript at 176. The jurors were cautioned that this instruction was preliminary and were told that the Court would instruct them more fully after closing arguments. Trial Transcript at 171 and 178.

Seven weeks later, the Court read the final instruction to the jury and gave each juror a copy of the instruction to read as well. The final instruction provided in part, "The limitations period begins to run when the plaintiff knew or, by the exercise of reasonable diligence should have known, that he may have been injured by the wrongful conduct of the defendant." Jury Instructions at p. 14.

Although the instructions differ slightly, the Court cured any possible error in the first instruction by correcting it in the final instruction. *See Davis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 906 F.2d 1206, 1212 (8th Cir.1990) (an erroneous instruction will not require reversal if error was cured by subsequent instruction). In addition, the change did not confuse the jury as the plaintiffs specifically note that "[t]here can be no question that the jury's verdict against these six plaintiffs was predicated on" the final instruction. Doc. 255 at 21.

Further, plaintiffs' claim of unfair surprise lacks credibility. All parties were well aware, due to extensive briefing and discussions, that the statute of limitations instruction was hotly disputed, and that the Court would not render a final determination until the charging conference.

### The Court Properly Refused to Define the Alleged Injuries and Wrongful Conduct

■ Next, the plaintiffs contend that the Court erred by refusing to instruct the jurors on the substantive elements of the plaintiffs' claims. Again, we disagree.

The Court went to great pains to instruct the jury that they were to determine only whether the statute of limitations barred the plaintiffs' claims. The jurors were not to consider the underlying merits of plaintiffs' claims. To avoid confusion, then, the Court refused several substantive instructions submitted by both the plaintiffs and the defendants.

As for defining the claimed injuries and alleged wrongful conduct, the Court instructed the jury as follows:

> The plaintiffs in this case claim that as a result of the defendants' conduct in operating the Feed Materials Production Center (FMPC) at Fernald, Ohio, they were unlawfully exposed to radioactive and hazardous materials. Plaintiffs contend that their alleged exposures have caused them to suffer severe and debilitating emotional distress and damage to certain personal property.

Jury Instructions at 13. In addition, the Court permitted counsel for the plaintiffs to explain the elements of the plaintiffs' claims to the jury at length in both opening and closing statements. Accordingly, the plaintiffs' challenge is without merit.

### OHIO'S SAVINGS STATUTE

The plaintiffs contend that Mr. Kelly's claims may not, as a matter of law, be barred by the statute of limitations. According to the plaintiffs, the Ohio savings statute applies to Mr. Kelly's claims. Therefore, his claims should not have been submitted to the jury for a statute of limitations determination. The plaintiffs' position is without merit.

■ The Ohio saving statute provides in part:

> In an action commenced, or attempted to be commenced, if in due time a judgment for the plaintiff is reversed, or if the plaintiff fails otherwise than upon the merits, and the time limited for the commencement of such action at the date of reversal or failure has expired, the plaintiff ... may commence a new action within one year after such date.

Ohio Rev.Code § 2305.19 (Page's 1991). The statute should be construed liberally so that disputes are decided on the merits rather than on technicalities. *Greulich v. Monnin*, 142 Ohio St. 113, 50 N.E.2d 310 (1943); *Kinney v. Ohio Dept. of Administrative Services*, 30 Ohio App.3d 123, 507 N.E.2d 402 (1986).

■ However, the saving statute applies only if the original action and the subsequent action are substantially the same. *Children's Hospital v. Ohio Dept. of Public Welfare*, 69 Ohio St.2d 523, 433 N.E.2d 187 (1982); *Heilprin v. Ohio State University Hospitals*, 31 Ohio App.3d 35, 508 N.E.2d 178 (1986). Where the parties and the relief sought in the new action are different from those in the original action, the actions are not substantially the same, and the saving statute does not apply. *Children's Hospital v. Dept. of Public Welfare*, 69 Ohio St.2d at 525–26, 433 N.E.2d 187. In addition, where the relief sought is the same in both actions, but the defendants are different, the actions are not substantially the same for purposes of the saving statute. *Heilprin v. Ohio State University Hospitals*, 31 Ohio App.3d at 37, 508 N.E.2d 178.

■ In August of 1986, Herb Kelly filed a complaint against NL Industries and NLO, Inc. in the Common Pleas Court of Hamilton County, Ohio. *See* appendix B to doc. 158. In his complaint, Mr. Kelly alleged that, "Throughout the course of [his] employment, Herbert Kelly was constantly exposed to uranium and radiation exposures, as well as other hazardous exposures, including, but not exclusively, hydrochloric, sulfuric, nitric, and hydrofluoric acids." *Id.* at 2. The complaint further alleges, "On or about February 27, 1985, Herbert Kelly discovered that he was suffering form a number of physical maladies, including, but not exclusively, interstitiual [sic] fibrosis, interstitiual [sic] nephritis,

and peripherial [sic] vascular disease, all of which were caused, or were substantially accelerated, or were pre-existing conditions aggravated, by his employment at the NLO plant, and exposure to the aforementioned toxic substances." *Id.* Mr. Kelly then requested compensatory and punitive damages for his physical injuries. *Id.* at 5.

In both the 1986 action and the instant action, Mr. Kelly named NL Industries and NLO, Inc. as defendants. However, the 1986 complaint alleged only physical injuries and the emotional distress that accompanies any serious injury. The plaintiffs in the instant action allege "serious emotional distress unaccompanied by bodily injury." Doc. 35 at 19. Further, the complaint in the instant action alleges causes of action for damage to personal property, fraud, breach of contract, violation of the Atomic Energy Act and violation of Ohio Revised Code 4101.01 et seq. which were never mentioned in the 1986 action. In addition, Mr. Kelly sought only compensatory and punitive damages in the 1986 action, while the plaintiffs here seek injunctive relief in the form of a court-administered medical monitoring fund in addition to monetary damages.

Most importantly, though, is Mr. Kelly's own testimony. Mr. Kelly repeatedly asserted that the injuries he alleged in the 1986 action were insufficient to put him on notice of the claims the plaintiffs make in the instant action. And, at the statute of limitations trial, Mr. Kelly testified that the emotional distress that gave rise to this action began in 1988. Trial Transcript at 5007.

For these reasons, the Court must conclude that Mr. Kelly's 1986 action and the instant action are not substantially the same. Accordingly, the Ohio saving statute does not apply to Mr. Kelly's claims.

### TOLLING

Once a class action is filed, the statute of limitations is tolled as to all putative class members until the motion for class certification is denied. *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983); *Ameri-*

*can Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713, *reh'g denied,* 415 U.S. 952, 94 S.Ct. 1477, 39 L.Ed.2d 568 (1974). Once the motion for class certification is denied, "class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Crown, Cork & Seal Co. v. Parker,* 462 U.S. at 354, 103 S.Ct. at 2398. "The Court reasoned that unless the filing of a class action tolled the statute of limitations, potential class members would be induced to file motions to intervene or to join [or to file separate actions] in order to protect themselves against the possibility that certification would be denied." *Id.* at 349, 103 S.Ct. at 2395. If that were the case, the efficiency and judicial economy intended by the class action rule would be frustrated. *Id.* Accordingly, the Court concluded, "[T]he rule most consistent with federal class action procedure must be that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe,* 414 U.S. at 554, 94 S.Ct. at 766.

However, these cases have no application to the case at bar. In 1985, residents, owners and lessees of property surrounding the FMPC initiated a class action for injuries allegedly sustained as a result of FMPC emissions. The plaintiffs filed a motion for class certification on January 15, 1986. The proposed class, which was eventually certified by this Court, specifically excluded "officers, directors and employees" of NLO.

In 1990, former FMPC employees, spouses of former FMPC employees and others who frequently performed work at the FMPC filed this action claiming that their personal property had been damaged and that they suffer severe and debilitating emotional distress as a result of overexposure to radioactive materials. This is not the situation contemplated by *American Pipe* and its progeny where the plaintiffs were lulled into a false sense that their claims were being litigated in the earlier

class action. The moving plaintiffs here were expressly *excluded* from the proposed class in *In re Fernald.* Accordingly, the tolling doctrine enunciated in *American Pipe* and its progeny has no application to the plaintiffs at bar.

## THE *IN RE FERNALD* SUMMARY JURY TRIAL

As part of the settlement process in *In re Fernald,* the 1985 class action initiated by the residents of the FMPC, this Court conducted a summary jury trial in September, 1989. The parties in *In re Fernald* ultimately reached a settlement. Whether evidence of the settlement and summary jury trial in *In re Fernald* would be admissible at the statute of limitations trial in *Day v. NLO* was a topic of great debate. Before the statute of limitations trial, the defendants' filed a motion to exclude evidence of the prior settlement and summary jury trial (doc. 112). Naturally, the plaintiffs opposed the motion.

On September 12, 1991, shortly before the statute of limitations trial commenced, this Court issued an order granting in part and denying in part the defendants' motion to exclude evidence of the prior settlement and summary jury trial (doc. 153). Relying upon Rule 408 of the Federal Rules of Evidence, this Court concluded:

> [E]vidence of the summary jury trial and the settlement agreement in the Fernald residents' suit must not be mentioned by either party during voir dire or in their respective opening statements. However, if such evidence is offered at trial for an allegedly permissible purpose, any objections will be ruled upon at that time.

Doc. 153 at 3.

The moving plaintiffs now contend that this limitation upon the presentation of such evidence presented an "artificial situation" and is now grounds for judgment notwithstanding the verdict or for a new trial. We disagree.

Rule 408 of the Federal Rules of Evidence provides in part:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either liability or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

Fed.R.Evid. 408. Rule 408 bars evidence of both settlement and settlement negotiations. *See Vincent v. Louis Marx & Co.,* 874 F.2d 36 (1st Cir.1989); Advisory Committee Note to Fed.R.Evid. 408. However, Rule 408 also provides, "This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed.R.Evid. 408.

In addition, Rule 402 provides, "Evidence which is not relevant is not admissible." Evidence of the settlement and summary jury trial in *In re Fernald* was not relevant to the statute of limitations determination in *Day v. NLO,* and was therefore inadmissible.

At the statute of limitations trial, the defendants were required to prove that plaintiffs were on notice of their claims prior to January 30, 1986 (four years prior to the date the complaint was filed). Either the plaintiffs were on notice of their claims prior to January 30, 1986, or they were not. Regardless, evidence of what occurred in 1989 was irrelevant to that determination.

In addition, the Court previously ruled that it would permit plaintiffs to offer evidence of the *In re Fernald* settlement and summary jury trial for an appropriate purpose pursuant to Rule 403. The plaintiffs failed to do so, and in fact offered evidence that the plaintiffs were on notice prior to the 1989 summary jury trial. *See* Trial Transcript at 2235, 3517–3518, 3536–3537, 3562, 4752, 5007, 5106 and 5113–5114. Accordingly, evidence of events occurring after the pivotal 1986 date, and especially evidence of events occurring after plaintiffs were already on notice of their claims, was irrelevant and was properly excluded.

Even if the evidence could be construed as relevant, any relevance was outweighed

by the danger of prejudice and confusion. Rule 403 of the Federal Rules of Evidence provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In the case at bar, both *Day v. NLO* and *In re Fernald* received substantial media attention. Unfortunately, media representatives frequently referred to both actions as "Fernald." In addition, the jury was to determine only whether the statute of limitations had run as to the *Day v. NLO* plaintiffs. The jury was not to consider the merits of the plaintiffs' claims. Accordingly, there was great potential for juror confusion. The Court instructed the jury at the beginning of the statute of limitations trial that the residents' action and the workers' action were two separate actions. Evidence of the residents' settlement and summary jury trial would simply have compounded the confusion while providing little if any relevant information.

### PLAINTIFFS' MOTION FOR A DIRECTED VERDICT

In the final pages of plaintiffs' motion for judgment notwithstanding the verdict or for a new trial, they summarily incorporate by reference the arguments made with respect to plaintiffs' motion for directed verdict. After reviewing those arguments, we conclude that the Court properly denied the plaintiffs' motion for a directed verdict.

### CONCLUSION

For the reasons set forth above, the motion of plaintiffs David Day, John Fitzgerald, Herbert Kelly, Hillery Webb, William Frey, Ralph Jones and Julia Sansone for judgment notwithstanding the verdict or, in the alternative, for a new trial is hereby denied.

SO ORDERED.