[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 263 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 264 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 265 
 I
Donald A. Woods appeals a judgment of the Jackson County Court of Common Pleas dismissing his complaint for injunctive relief and denying certification of a class action. He assigns three errors for our review:
"I. The trial court erred in finding that appellant Donald Woods lacks sufficient standing to bring this class action.
"II. The trial court erred in effectively overruling appellant's motion for class certification, as certification was proper under Civil Rule 23.
"III. As applied by the Jackson County Court of Common Pleas, Civil Rule 23 is unconstitutional, as it violates the affected class' ArticleI, Section 16 [Ohio Constitution] guarantee of the 'right to a remedy.'"
We hold that the trial court correctly determined that the appellant lacked standing to seek an injunction and maintain a class action. Further, we find no constitutional infirmity in denying the appellant's attempt at maintaining a class action. Accordingly, we affirm the trial court's dismissal of the appellant's complaint.
 II
In April 1995, the appellant arrived at the emergency room at Oak Hill Community Medical Center ("Oak Hill") complaining of chest pain. An emergency room physician administered a series of tests on the appellant, including a CKMB% blood enzyme test. The CKMB% test is designed to detect the level of CKMB, an enzyme released by the heart during a myocardial infarction, i.e., a heart attack. A "normal" level of CKMB% is less than four percent, while "abnormal" levels are between four percent and twenty-five percent. The appellant's test results, which were printed on a report form from Oak Hill's laboratory, showed a CKMB% ratio of 12.2 percent. However, the report form erroneously listed the "normal range" as between four percent and twenty-five percent.
The appellant remained at the hospital overnight before physicians later transferred him to Mt. Carmel Medical Center in Columbus, where he underwent heart catheterization and balloon angioplasty. A year later, the appellant filed a medical malpractice suit against Oak Hill and other defendants alleging that the *Page 266 
hospital failed to timely diagnose and treat his myocardial infarction. During the course of the malpractice lawsuit, cardiologist John Schroeder of the Stanford University Medical School reviewed the appellant's medical records and informed him of the incorrect notation of the "normal range" on the Oak Hill laboratory's CKMB% test report form. Schroeder also informed Oak Hill about this error, which the hospital's laboratory corrected in June 1996. Oak Hill's laboratory had listed the incorrect normal range on its report forms since September 1993. The appellant's medical malpractice suit ended in January 1998 with a jury verdict in favor of the defendants.
Prior to the trial in his medical malpractice action against Oak Hill, the appellant filed suit in this case for injunctive relief and certification of a class action. The complaint alleged that the appellant had asked Oak Hill to notify other patients who received CKMB% test results with an incorrect "normal range" notation and that Oak Hill had refused to do so. The complaint further prayed that Oak Hill "be ordered by injunction to identify the patients examined, diagnosed, and treated by using the incorrect normal range for the CKMB% test, to notify them, and to provide such further services to them as are necessary to protect their health." The complaint and a separately filed motion also asked the court to certify the appellant's "injunctive relief action" as a class action.[1] The appellant defined the class as those patients who had undergone CKMB% testing at Oak Hill from September 1993 through June 1996 and whose CKMB% results had shown between four percent and twenty-five percent.
Oak Hill moved to dismiss the appellant's complaint, arguing that the appellant lacked standing to sue for injunctive relief and therefore lacked standing to maintain a class action. Oak Hill also argued that the trial court, in any event, should deny the appellant's certification motion because the appellant had failed to satisfy the Civ.R. 23 requisites for a class action lawsuit. The trial court granted Oak Hill's motion to dismiss for lack of standing, which necessarily resulted in denial of the class certification motion. The court found that the appellant had already been notified of the inaccuracy of his CKMB% report form. Because the appellant had already received notice of the inaccurate CKMB% form from the Oak Hill laboratory, the court found that he "lack[ed] the standing to maintain this action." The appellant filed a timely notice of appeal.
 III
We analyze the first and second assignments of error together, as they raise interrelated issues concerning the trial court's dismissal of the appellant's complaint. *Page 267 
The trial court found that the appellant lacked standing to sue in his own right, which foreclosed the possibility that he could maintain an action on behalf of either a class or himself alone. The appellant argues in the first two assignments of error that the trial court's standing analysis was incorrect and that he met all requirements contained in Civ.R. 23 for maintaining a class action. We disagree with the appellant.
Normally, we review a trial court's determination of whether a class action may be maintained under Civ.R. 23 using an abuse-of-discretion standard. Hamilton v. Ohio Say. Bank (1998), 82 Ohio St.3d 67, 70,694 N.E.2d 442, 447; Marks v. C.P. Chem. Co., Inc. (1987),31 Ohio St.3d 200, 31 OBR 398, 509 N.E.2d 1249, syllabus. This case, however, does not involve merely the court's denial of a certification motion. Indeed, the court did not explicitly deny the appellant's motion to certify a class action under Civ.R. 23. Rather, the trial court granted Oak Hill's motion to dismiss the appellant's complaint for lack of standing to sue. In effect, the court's decision constitutes a dismissal pursuant to Civ.R. 12(B)(6) for failure to state a claim upon which relief can be granted. See A-Nursing Care of Cleveland, Inc. v.Florence Nightingale Nursing, Inc. (1994), 97 Ohio App.3d 623, 626-627,647 N.E.2d 222, 224-225 (holding that motion to dismiss under Civ.R. 12[B] is proper vehicle to raise a lack of standing); Yo-Can, Inc. v. The Yogurt Exchange, Inc. (Dec. 17, 1998), Mahoning App. No. 95CA72, unreported, 1998 WL 896547 (relying upon A-Nursing Care to observe that Civ.R. 12[B][6] motion was proper method of raising lack of standing). A dismissal for failure to state a claim presents a legal question, which we review de novo. Shockey v. Fouty (1995), 106 Ohio App.3d 420, 424,666 N.E.2d 304, 306; Wilson v. State (1995), 101 Ohio App.3d 487, 490,655 N.E.2d 1348, 1350. Dismissal for failure to state a claim is proper if it appears beyond doubt, presuming all factual allegations in the complaint to be true, that the plaintiff can prove no set of facts that would entitle him to relief. State ex rel. Edwards v. Toledo City SchoolDist. Bd. of Edn. (1995), 72 Ohio St.3d 106, 108, 647 N.E.2d 799,801-802; Perez v. Cleveland (1993), 66 Ohio St.3d 397, 399, 613 N.E.2d 199,200.
The appellant pleaded his complaint as a purported class action under Civ.R. 23. The Ohio Supreme Court has listed seven prerequisites that a potential class representative must satisfy before class action certification is appropriate. Hamilton, 82 Ohio St.3d at 71,694 N.E.2d at 448; see, also, Civ.R. 23(A) and (B). Among these requisites is that the named representative be a member of the class.[2] *Page 268 
Standing is part and parcel of the requirement that the representative is a member of the class he seeks to represent. See Hamilton,82 Ohio St.3d at 74, 694 N.E.2d at 450 (class membership requirement requires that representative have standing); see, also, Paoletti v. TravelersIndemn. Co. (May 6, 1977), Lucas App. No. L-75-196, unreported (noting that standing is a "separate and distinct" inquiry from remaining Civ.R. 23 requirements and presents an "essential threshold" plaintiff must cross before class representation may be determined), quoting Weiner v.Bank of King of Prussia (E.D.Pa. 1973), 358 F. Supp. 684, 694-696. "In order to have standing to sue as a class representative, the plaintiff must possess the same interest and suffer the same injury shared by all members of the class he or she seeks to represent." (Emphasis added.) Hamilton, 82 Ohio St.3d at 74, 694 N.E.2d at 450, citing 5 Moore's Federal Practice (3 Ed. 1997) 23-57, Section 23.21 (1). Thus, to be a proper representative in a class action seeking injunctive relief, the plaintiff must have a basis for injunctive relief in his own right. SeeWaruer v. Waste Mgt., Inc. (1988), 36 Ohio St.3d 91, 97, 521 N.E.2d 1091,1096.
In arguing that he has standing to bring this class acticri, the appellant urges us to focus upon the contours of the class he has defined, i.e., persons who had CKMB% tests administered between September 1993 and June 1996 and who tested between four percent and twenty-five percent. Because he meets this factual description, the appellant argues that that should suffice to make him a member of the class. The appellant further urges us to ignore any argument that he lacks the "same interest" simply because he has already been notified of the inaccuracies of Oak Hill's CKMB% report form. The appellant argues that rigid adherence to standing requirements "ignores the facts and circumstances which are unique to this case and which merit an exception to the rule [of standing]." We disagree with the appellant because standing is an indispensable requirement of any action, including a class action.
The concept of standing asks whether a particular plaintiff may properly raise a particular claim. Where no statute confers standing on a particular plaintiff, the question depends on whether the party has alleged a "personal stake in the outcome of the controversy." Clevelandv. Shaker Hts. (1987), 30 Ohio St.3d 49, 51, 30 OBR 156, 158,507 N.E.2d 323, 325; Middletown v. Ferguson (1986), 25 Ohio St.3d 71,75-76, 25 OBR 125, 128-130, 495 N.E.2d 380, 384-385, quoting Sierra Clubv. Morton (1972), 405 U.S. 727, 731-732, 92 S.Ct. 1361, 1364-1365,31 L.Ed.2d 636, 640-642. This "personal stake" requirement has three basic elements: (1) "injury in fact" to the plaintiff that is concrete and particularized, *Page 269 
(2) a causal connection between the injury and the conduct complained of, and (3) redressability, i.e., that it is likely that the injury will be redressed by a favorable decision granting the relief requested. Lujanv. Defenders of Wildlife (1992), 504 U.S. 555, 560-561, 112 S.Ct. 2130,2136, 119 L.Ed.2d 351, 363-365. The fact that a plaintiff seeks to bring a class action does not change this standing requirement. Individual standing is a threshold to all actions, including class actions. Fallickv. Nationwide Mut. Ins. Co. (C.A.6, 1998), 162 F.3d 410, 423. As the United States Supreme Court has observed:
"That a suit may be a class action * * * adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." Simon v. E. Ky. Welfare RightsOrg. (1976), 426 U.S. 26, 40, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450, 461, fn. 20; see, also, Lewis v. Casey (1996), 518 U.S. 343, 357,116 S.Ct. 2174, 2183, 135 L.Ed.2d 606, 622.
Thus, if a named plaintiff purporting to represent a class does not establish the requisite standing, he may not seek relief on behalf of himself or any other member of the class. O'Shea v. Littleton (1974),414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674, 682.
The trial court properly dismissed the appellant's complaint and his attempt to certify a class action because he does not have standing to seek the injunctive relief sought. The only injunctive relief prayed for by the appellant consists of an order compelling Oak Hill to inform all members of the purported class that their CKMB% report forms from the Oak Hill laboratory listed an incorrect "normal range." However, the appellant has already received notice that his test results listed an erroneous "normal range." Assuming that the inaccuracy complained of has caused an "injury in fact" for standing purposes, the appellant fails to meet the "redressability" prong because he has already received the relief he seeks for the class. Thus, an injunction does nothing for the appellant individually. When a plaintiff has already been afforded the particular relief sought, he has no injury to redress and therefore no standing to seek injunctive relief. See Ward v. Walsh (C.A.9, 1993),1 F.3d 873, 881 (prisoner seeking injunction allowing Jewish prisoners to wear religious jewelry, yarmulkes, and talliths lacked standing because prison policy already allowed him to wear these items); Hardin v.Harshbarger (N.D.Ill. 1993), 814 F. Supp. 703, 707 ("a party that cannot demonstrate that an injunction will accomplish some tangible good in [his or] her favor has no standing to seek such relief"). Without individual standing to seek an injunction, the appellant cannot maintain a class *Page 270 
action for injunctive relief. Warner, supra, 36 Ohio St.3d at 97,521 N.E.2d at 1096.
Despite having received notice of the erroneous Oak Hill laboratory report form, the appellant intimates that he is still a valid member of the class because Oak Hill never "voluntarily notified" him of the error. Instead of being "notified" in the manner sought by this injunctive class action, the appellant learned of the mistake during his prior malpractice suit against Oak Hill. The appellant therefore reasons that he is still a valid member of the class because he did not receive the requested relief in the exact manner requested in this case. This argument makes little sense. Whether Oak Hill "voluntarily notified" the appellant is of no consequence; indeed, the appellant seeks an injunction commanding Oak Hill to give notice to the class, essentially asking that Oak Hill do something involuntarily. Further, simply because the appellant received his relief in a manner other than an injunction proceeding does not change his lack of standing. The relevant inquiry in an analysis of standing for injunctive relief focuses on whether the injunction sought would provide the appellant with some tangible good, i.e., whether he has some "personal stake" in the injunction being granted. See Ottawa Cty. Bd. of Commrs. v. Marblehead (1995),102 Ohio App.3d 306, 316, 657 N.E.2d 287, 293 (absent statutory authority to bring injunction, standing to seek injunction exists only where party has sufficient personal stake in the outcome of a controversy). If the plaintiff has already received the relief sought through other channels, the injunction will not result in a tangible good to the plaintiff, removing the need for an injunction and therefore resulting in a lack of standing. Ward v. Walsh, supra, 1 F.3d at 881; Hardin v. Harshbarger, 814 F. Supp. at 707. Notwithstanding the appellant's insistence that he is committed to representing the purported class and that he has an "interest" in the litigation, the appellant lacks an "interest" in the legal sense. Assuming the appellant is sincere in his desire that the class receive notice of the erroneous CKMB% report forms, such a "spirited dispute" alone is not sufficient to confer standing to sue. See Richardson v. Ramirez (1974), 418 U.S. 24, 35-36,94 S.Ct. 2655, 2661-2662, 41 L.Ed.2d 551, 560-561; Hall v. Beals (1969),396 U.S. 45, 48-49, 90 S.Ct. 200, 202, 24 L.Ed.2d 214, 217-218; UnitedStates Parole Comm. v. Geraghty (1980), 445 U.S. 388, 421,100 S.Ct. 1202, 1222, 63 L.Ed.2d 479, 507, fn. 16 (Powell, J., dissenting).
Throughout his brief, the appellant urges us to ignore the requisite of standing and allow him to pursue a class action in this case. Contrary to the appellant's wishes, however, we may not ignore the requirement that a plaintiff have standing to sue. The standing requirement is essential to "'ensure that "the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution."'" State ex *Page 271 rel. Dallman v. Franklin Cty. Court of Common Pleas (1973),35 Ohio St.2d 176, 179, 64 O.O.2d 103, 105, 298 N.E.2d 515, 516-517,quoting Sierra Club v. Morton, 405 U.S. at 732, 92 S.Ct. at 1364,31 L.Ed.2d at 641, and Flast v. Cohen (1968), 392 U.S. 83, 101,88 S.Ct. 1942, 1953, 20 L.Ed.2d 947, 962. If we ignore the standing requirement, we would be ignoring a vital aspect of our adversary system. See id.;see, also, Fortner v. Thomas (1970), 22 Ohio St.2d 13, 14, 51 O.O.2d 35, 35, 257 N.E.2d 371, 372 (courts decide "actual controversies between parties legitimately affected by specific facts"). The requirement that a plaintiff have standing to sue is an indispensable element of justiciability that we may not compromise.
The first and second assignments of error are overruled.
 IV
In his third assignment of error, the appellant raises an alternative argument in support of overruling the trial court's dismissal of his complaint. The appellant argues that application of the standing requirement in this case violates Section 16, Article I of the Ohio Constitution by denying the purported class the benefit of a remedy for Oak Hill's mistake. Section 16, Article I of the Ohio Constitution, also known as the "Right to a Remedy" provision, states:
"All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.
Specifically, the appellant argues that the standing requirement creates a "Catch-22" in which there would never be a proper plaintiff to represent the class because "any person with knowledge sufficient to cause them [sic] to demand notice would automatically be an improper Plaintiff, since they [sic] would no longer need the notice requested." Thus, the appellant argues that there could never be a class action, denying the class a remedy in violation of Section 16, Article I of the Ohio Constitution. We reject the appellant's constitutional argument as logically and legally flawed.
The first flaw in the appellant's argument rests with the notion that anyone "with knowledge" of the Oak Hill laboratory's erroneous notation on the report form is eliminated from potential representation of the purported class. The appellant does not lack standing simply because he has learned of the Oak Hill laboratory using an erroneous report form from September 1993 to June 1996. The key reason that the appellant lacks standing is that he has achieved the relief sought, i.e., notification that his CKMB% report form listed an inaccurate "normal range." Some other person who learns of this mistake could theoretically maintain this class action, provided all the other Civ.R. 23 requirements are *Page 272 
satisfied, so long as that person has not received particularized notice from Oak Hill that his or her CKMB% report form contained an inaccuracy. Mere knowledge that Oak Hill's laboratory erred on its report form does not result in a lack of standing; rather, it is the appellant's particular situation that makes him an inappropriate plaintiff for injunctive relief, i.e., being one who has already received individualized notice of the Oak Hill laboratory's reporting error.
A situation closer to the "Catch-22" type of scenario suggested by the appellant (i.e., anyone receiving notice from Oak Hill of the laboratory's error would preclude a class action) arguably arises if the plaintiff receives the requested relief after filing suit. This situation would not result in a lack of standing to bring a class action because the plaintiff had not received his remedy prior to filing suit. Rather, this situation would implicate the mootness doctrine, which dictates that a plaintiff must have a personal stake in the outcome for the duration of the litigation. See Geraghty, supra, 445 U.S. at 397, 100 S.Ct. at 1209,63 L.Ed.2d at 491 (defining mootness as ""the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation [standing] must continue throughout its existence [mootness]'"). Id., quoting Monaghan, Constitutional Adjudication: The Who and When (1973), 82 Yale L.J. 1363, 1384. Even in this situation, however, the appellant's "Catch-22" theory is not persuasive. If a plaintiff purporting to represent the class has his claims mooted after the trial court certifies the class action, it is well settled that the class action remains viable because "the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by the [named representative]." Sosnav. Iowa (1975), 419 U.S. 393, 399, 95 S.Ct. 553, 557, 42 L.Ed.2d 532,540. The more troubling situation arises when a named plaintiff's claims become moot before the trial court's ruling on a certification motion. In that instance, the concern is that the defendant could "pick off" a named plaintiff's claims before class certification in an attempt to have the class action dismissed as moot. As a practical matter, allowing the class action to be mooted would prevent the class from ever becoming certified. Accordingly, courts have recognized that this type of defense strategy "could prevent the courts from ever reaching the class action issues, [leaving class certification] at the mercy of a defendant, even in cases where a class action would be most clearly appropriate." Susmanv. Lincoln Am. Corp. (C.A.7, 1978), 587 F.2d 866, certiorari denied (1980), 445 U.S. 942, 100 S.Ct. 1336, 63 L.Ed.2d 775. Thus, in situations where a pending motion for class certification is pursued with reasonable diligence, the class action will not be mooted by a defendant's efforts to "pick off" claims of the named plaintiffs by tendering the relief sought. Id. See, also, Brunet v. Columbus (C.A.6, 1993), 1 F.3d 390,400; Lusardi v. Xerox Corp. (C.A.3, 1992), 975 F.2d 964, 981-982; Reedv. Heckler (C.A.10, 1985), *Page 273 756 F.2d 779, 786-787; Zeidman v. J. Ray McDermott Co. (C.A.5, 1981),651 F.2d 1030, 1050-1051.
The second flaw in the appellant's constitutional argument rests with his misapplication of Section 16, Article I. The appellant cites a number of Ohio Supreme Court cases invalidating statutes of limitations and repose that barred certain claims before plaintiffs knew or could have known of them. See, e.g., Brennaman v. R.M.I. Co. (1994),70 Ohio St.3d 460, 639 N.E.2d 425 (invalidating ten-year statute of repose for actions based upon defective improvement to real property);Hardy v. VerMeulen (1987), 32 Ohio St.3d 45, 512 N.E.2d 626 (declaring unconstitutional a repose period barring medical malpractice claims regardless of plaintiff's knowledge of injury); Gaines v.Preterm-Cleveland, Inc. (1987), 33 Ohio St.3d 54, 514 N.E.2d 709 (statute of repose cannot bar claims of medical malpractice plaintiff who discovered injury less than one year before repose period expired);Mominee v. Scherbarth (1986), 28 Ohio St.3d 270, 28 OBR 346, 503 N.E.2d 717
(statute of repose for medical malpractice claims unconstitutional as applied to minors). These cases are inapposite to the situation before us and do not lead us to conclude that the appellant's lack of standing violates Section 16, Article I. The cases invalidating statutes and rules on the basis of Section 16, Article I have involved "serious infringement of a clearly preexisting right to bring suit." (Emphasis added.) Fabreyv. McDonald Police Dept. (1994), 70 Ohio St.3d 351, 355, 639 N.E.2d 31,35; see, also, Sorrell v. Thevenir (1994), 69 Ohio St.3d 415, 426,633 N.E.2d 504, 513 (Section 16, Article I prevents the denial of a remedy that would leave plaintiff without legal recourse). The situation in this case results in no such denial.
Preventing a plaintiff who lacks standing from maintaining a class action does not infringe any purported class member's "right to bring suit." Any purported class member who feels he or she has been aggrieved by the conduct of Oak Hill may bring suit on his or her own behalf to seek redress for his or her own injuries. Further, every member of the appellant's purported class has a right to demand his or her medical records and may assert a civil action for the hospital's refusal to honor that demand. R.C. 3701.74(C) and (D). Rather than taking away anyone's right to bring suit, the appellant's lack of standing merely prevented him from maintaining a class action. However, the appellant has provided us with no authority for the proposition that there exists a "right" to bring a class action. To the contrary, the decision to certify a class action rests within the sound discretion of the trial court. See Hamilton, 82 Ohio St.3d at 70-71, 694 N.E.2d at 447-448; Marks,31 Ohio St.3d at 201, 31 OBR at 398-399, 509 N.E.2d at 1252. The denial of class action certification is simply the denial of the opportunity to use a particular procedural device, not the infringement of a right to bring suit. The appellant's lack of standing to bring suit and maintain a class *Page 274 
action presents no conceivable violation of Section 16, Article I of the Ohio Constitution.
Finally, the nature of the appellant's purported remedy is inconsistent with the notion that the purported class has been denied a remedy in the constitutional sense. The appellant sought to certify a class action under Civ.R. 23(B)(2), seeking injunctive relief. Although the appellant argues that the purported class has been denied a remedy in the form of injunctive relief, such a denial cannot form the basis of a Section 16, Article I violation. An injunction is an extraordinary equitable remedy that a person does not demand as a matter of right; rather, such equitable relief rests in the sound discretion of the trial court.Perkins v. Quaker City (1956), 165 Ohio St. 120, 59 0.0. 151,133 N.E.2d 595, syllabus. Even though a defendant may have violated some legal right of a plaintiff and the plaintiff may be entitled to some legal redress, an injunction does not automatically follow. Id. at syllabus and 125, 59 0.0. at 153-154, 133 N.E.2d at 598. Thus, a denial of injunctive relief cannot form the basis of a purported violation of a "right to a remedy." The third assignment of error is overruled.
Having overruled each of the appellant's assignments of error, we affirm the trial court's judgment of dismissal.
[1] While injunctive relief is an equitable remedy and not traditionally considered as an independent cause of action, we need not address this potential flaw in appellant's pleadings in light of our decision concerning standing, infra.
[2] The trial court ruled only that the appellant lacked standing; it made no ruling as to any of the other prerequisites to maintaining a class action. Thus, although the parties argue at length regarding the appellant's satisfaction (or failure to satisfy) Civ.R. 23(A) and (B) requirements, we limit our discussion to whether the trial court correctly observed that the appellant lacked standing to maintain the suit.
KLINE, P.J., and PETER B. ABELE, J., concur.
IN RE CORRY M., 134 Ohio App.3d 274 (1999) 730 N.E.2d 1047 In re CORRY M. No. 98-L-033. Court of Appeals of Ohio, Eleventh District, Lake County. Decided September 7, 1999.
Appeal from Court of Common Pleas, Lake County, Juvenile Division. *Page 275 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 276 
Charles E. Coulson, Lake County Prosecuting Attorney, Janette M. Bell and Taylir K Linden, Assistant Prosecuting Attorneys, for appellant.
James K Farrel4 for appellee.
Kirsti S. Talikka, guardian ad litem.
WILLIAM M. O'NEILL, Judge.
The following appeal is from a judgment of the Lake County Court of Common Pleas, Juvenile Division, which prevented appellant, the state of Ohio, from presenting the hearsay statements made by an alleged child victim to a social worker investigating claims that the child was sexually abused by appellee, Corry M.[1] (d.o.b. March 27, 1984) and his twin brother, Dustin M. The state alleged that the hearsay statements were admissible pursuant to Evid.R. 803 (4) and 807. For the reasons that follow, we affirm the judgment of the trial court.
The facts pertinent to this appeal are as follows. On August 21, 1997, a complaint was filed in the Lake County Court of Common Pleas, Juvenile Division, alleging that appellee was a delinquent child for committing the following sexual acts against a four-year-old child: one count of rape, a felony of the first degree if committed by an adult, in violation of R.C. 2907.02; and one count of gross sexual imposition, a felony of the fourth degree if committed by an adult, in violation of R.C. 2907.05. The state initially alleged that the above offenses occurred sometime on or between February 25, 1996 and May 6, 1996. The state later amended the complaint to allege that appellee committed the offenses sometime on or between February 25, 1996 and August 31, 1996. Appellee denied any involvement in the offenses as set forth in the complaints, and the trial court subsequently appointed him counsel, as well as a guardian ad litem. *Page 277 
On December 2, 1997, the trial court granted the state's request, without objection, to join the case against appellee with that filed against appellee's twin brother, Dustin M. (case No. 97 DL 1814, 98-L-034 on appeal), arising out of the same set of facts. Both cases proceeded to a bench trial on December 15, 1997.
At trial, appellant began its case-in-chief by eliciting testimony from Officer Mark Parisi of the Madison Township Police Department. After Officer Parisi explained his rather limited involvement in the case, the state called the alleged victim to the stand.
Prior to permitting the alleged child victim to testify in this matter, the trial court conducted an in camera hearing to determine if the child was competent to testify. At this hearing, the then five-year-old female child gave appropriate responses as to her surroundings, as well as her ability to distinguish a lie from the truth. However, the child had difficulty expressing answers to the questions that were asked, and many of her responses appeared in the transcript as the following: "(No verbal response)."
The trial court made a preliminary determination that the child was competent to testify. However, the court expressed concerns with the child's ability to communicate based on the fact that the witness answered most of the questions with a "shake of the head." The court indicated that it would reserve further judgment into the child's competency to testify based on her ability to communicate verbally at trial.
Following the initial competency determination, the trial continued with the child's testimony. Under questioning by an assistant prosecutor, the child stated with whom she was currently living and noted that she used to live with the two juvenile defendants, Corry and Dustin. The child was unable to identify the two juveniles in the courtroom and the witness later explained that she was afraid "[b]ecause [she had] never been in court."
The assistant prosecutor then attempted to elicit details regarding the alleged acts of sexual abuse. The child initially responded that she did not want to tell her "secret," and later stated that she could not remember what she had told others in the past regarding the allegations of abuse. At that time, the prosecutor was given permission from the trial court to ask the witness leading questions. The child acknowledged that she did not like living with the two juvenile defendants. However, the child denied that they had ever done anything "mean" to her. The direct examination of the child continued as follows:
"Q: Do you know-do you know what your private parts are? Do you know what those are?
"A: (No verbal response.) *Page 278 
"Q: Okay. Now, can you tell the Court, did anybody ever touch your private parts?
"A: Huh-uh.
"Q: No?
"Assistant Prosecutor: Your Honor, I'm not going to ask any more questions.
"The Court: You have no further questions?
"Assistant Prosecutor: Nothing further at this time."
The state made no further attempt to elicit testimony from the alleged child victim. Instead, the prosecution focused its attention on obtaining the hearsay statements that the child had made to others regarding the alleged sexual abuse.
Appellant then called Shelly Pomeroy to the stand. Pomeroy testified that she is a licensed social worker at the Lake County Department of Human Services. In September 1996, she was assigned to check into a referral received by the department regarding the allegations of sexual abuse against the then four-yearold child victim.
Pomeroy first interviewed the child on September 24, 1996. At this initial meeting, Pomeroy interviewed the child alone and utilized body maps or anatomical drawings of a preschool female. Throughout their discussion, the child was able to identify the various body parts shown on the body maps and answered a series of questions as to the function of these body parts and whether anyone had "ever done something [the child] didn't like to [that] part." When Pomeroy's testimony turned to the nature of the disclosure made by the alleged victim, appellee objected, asserting that the witness's testimony amounted to nothing more than inadmissible hearsay.
The state argued that the hearsay statements that the child made to Pomeroy were admissible for two reasons. First, appellant argued that the child's statements fell into an exception to the hearsay rule, set forth in Evid.R. 803 (4), as a statement made for purposes of medical diagnosis or treatment. Second, appellant argued that the child's statements were admissible pursuant to a relatively new hearsay exception, set forth in Evid.R. 807, allowing for the admissibility of a child's out-of-court statement in certain circumstances involving allegations of abuse.
Based upon the limited evidence that had been presented by the state at that point, the trial court determined that Evid.R. 803 (4) had no application to this case. However, the court held that Evid.R. 807 might apply.
Appellee argued that the state failed to give him proper notice, pursuant to Evid.R. 807(A)(4), of its intent to use the out-of-court statements made by the child to Pomeroy. Appellee argued that the state's failure to give proper notice *Page 279 
prevented him from properly preparing a defense. The state asserted that it did not expect the child to refuse to testify at trial and that its only alternative was to seek the introduction of the out-of-court statements made by the child to Pomeroy. The trial court expressed concern over the state's failure to give the defense notice of its intent to present the hearsay statements of the child at trial according to rule. By agreement of the parties, this controversy was resolved, and the court held that Pomeroy would not be permitted to testify at trial until appellee could prepare a proper defense to the evidence the state sought to have admitted pursuant to Evid.R. 807.
Rather than continue the trial at that point, the trial court conducted a preliminary Evid.R. 807 hearing for the purpose of determining, in the future, whether the information provided by the alleged victim in this case to Pomeroy had particularized guarantees of trustworthiness as required under Evid.R. 807(A)(1). At the Evid.R. 807 hearing, Pomeroy testified as to her meetings with the alleged victim, as well as the lack of suggestive procedures that were used during each interview. In addition to the body maps used at the initial interview on September 24, 1996, a second "doll interview" was conducted on September 30, 1996, by another social worker at the agency. On October 10, 1996, Pomeroy conducted a final "coloring book" interview with the child at her home.
Pomeroy acknowledged that during the three interviews, inconsistencies developed as to the alleged victim's accounts of abuse. During one of the interviews, the child began to describe inappropriate touching among several other members of the household. The social worker attempted to explore the specifics of these new "disclosures" until the child's "attention span began to dwindle." Pomeroy was unable to establish a time frame as to when the alleged instances of abuse occurred other than "anywhere from "96," when the juvenile defendants first came to live in the same household as the victim.
In the notes that Pomeroy took of her interviews with the alleged victim, she wrote that the child was "a little naive to the concept of the truth and was told this meant talking only about what really happened." Pomeroy did not explore whether the child had a reason to make up the allegations against the two juveniles but acknowledged that she did have concerns about possible coaching and warned the child's mother not to question the child between interviews.
Following the conclusion of the Evid.R. 807 hearing, the trial court permitted the state to present one more witness at trial whose testimony would not be dependent on its future evidentiary ruling regarding the admissibility of the child's out-of-court statements. The state called Lauren McAliley, a pediatric nurse at University Hospitals in Cleveland, who examined the alleged victim.
McAliley testified that she conducted a thorough physical examination of the child sometime toward the end of March 1998. Based on her examination, *Page 280 
McAliley determined that the child was probably a victim of sexual abuse. However, the nurse could not reject other possible explanations for her findings with respect to the child. She further acknowledged that she had no evidence as to who was responsible for the alleged abuse. The witness also testified that she knew that the child had contact with an uncle whom the victim's mother accused of molesting the mother for a period of nine years.
Following McAliley's trial testimony, the proceedings were adjourned until February 5, 1998, so that appellee would have adequate time to prepare for appellant's attempt at introducing the out-of-court statements of the alleged child victim pursuant to Evid.R. 807. The trial continued at that time with the state's attempting to present the child's hearsay statements that were made to Pomeroy. Appellee again objected to the admission of that evidence as inadmissible hearsay. After a lengthy discussion by the parties, the trial court determined that the evidence was not admissible pursuant to Evid.R. 807. In making its determination, the trial court noted that the victim denied at trial that anyone "ever" touched her "private parts." The court further noted that Pomeroy herself expressed concerns regarding the truthfulness of the child's statements, the child's inconsistent statements as to how the incident occurred, and the possibility that the child had been coached regarding what to say at the interviews. The trial court ultimately held that the case "cries out" for cross-examination of the alleged child victim.
Following the above ruling, appellant advised the trial court that, pursuant to Juv.R. 22(F), Crim.R. 12(J), and R.C. 2945.67, the court's ruling had rendered the state's proof of the pending charges so weak in its entirety that any reasonable possibility of effective prosecution was destroyed. The state subsequently filed a timely notice of appeal from the trial court's judgment entry. This was followed on February 12, 1998, by appellant's filing in this court a motion for leave to appeal. No brief in opposition to appellant's motion was filed, and, on May 1, 1998, this court granted appellant's motion for leave to appeal. Appellant now asserts the following two assignments of error:
"[1.] The trial court erred to the prejudice of the state when it excluded evidence presented pursuant to Evid.R. 803 (4).
"[2.] The trial court erred to the prejudice of the state when it excluded evidence presented pursuant to Evid.R. 807."
In the first assignment of error, appellant argues that the trial court erred in failing to permit Pomeroy from testifying as to the statements made by the alleged child victim. Specifically, appellant argues that the statements made to this social worker by the victim were admissible under Evid.R. 803 (4) for purposes of medical diagnosis or treatment. That rule provides as follows: *Page 281 
"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
"* * *
"(4) Statements for purposes of medical diagnosis or treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
In State v. Jett (Mar. 31, 1998), Portage App. No. 97-P-0023, unreported, at 28, 1998 WL 258166, this court noted that while most hearsay declarations offered into admission under Evid.R. 803 (4) will involve situations where a patient seeks diagnosis or treatment of a physical or psychological condition from a medical doctor, the rule does not require that such a declaration necessarily be made to a physician. Indeed, a statement may fit within the scope of this hearsay exception if it is directed to other physical and mental health professions including nurses, psychologists, and therapists. Id. at 28-29. Appellate courts have previously recognized that statements made to a social worker may fit within this exception. See, e.g., Presley v. Presley (1990),71 Ohio App.3d 34, 38, 593 N.E.2d 17, 19, citing State v. Miller (1988),43 Ohio App.3d 44, 47, 539 N.E.2d 693, 696-697. In the present case, appellant asserts that the statements made by the alleged child victim to Pomeroy, a licensed social worker, were for the purposes of determining if the child should be removed from her current environment and was in need of physical and/or psychological treatment.
Traditionally, the rationale behind the hearsay exception found in Evid.R. 803 (4) stemmed from the "selfish-interest rationale" or the belief that a person was motivated to tell the truth when seeking medical diagnosis or treatment because the person's well-being might depend on expressing truthful information to the medical professional. Jett at 26;State v. Dever (1992), 64 Ohio St.3d 401, 407, 596 N.E.2d 436, 441-442. It is this truthful motivation that makes the declarant's statements inherently trustworthy.
The Supreme Court of Ohio previously held that if a child's statements were not motivated by his or her own desire to obtain medical diagnosis or treatment, then the statements were not admissible under Evid.R. 803 (4). State v. Boston (1989), 46 Ohio St.3d 108, 121, 545 N.E.2d 1220,1233-1234. More recently, however, the court has revisited this area and concluded that a child's out-of court statements relating to medical diagnosis or treatment are not automatically untrustworthy simply because the child was not personally motivated to seek care, but, rather, because of the child's tender years, was directed to seek *Page 282 
treatment by an adult. Dever at 409-410, 596 N.E.2d at 443-444. The Dever court stated as follows:
"Boston gives the impression that if the slightest possibility exists that the child's statements were not motivated by her own desire to obtain medical diagnosis or treatment, the statements may not come in as an Evid.R. 803 (4) exception. We believe that it is not necessary to apply that approach to every instance in which a child of tender years makes a statement in the course of diagnosis and treatment. While we recognize that a young child would probably not personally seek treatment, but would generally be directed to treatment by an adult, we do not find that the child's statements relating to medical diagnosis or treatment are always untrustworthy for that reason alone. Once the child is at the doctor's office, the probability of understanding the significance of the visit is heightened and the motivation for diagnosis and treatment will normally be present. That is to say, the initial desire to seek treatment may be absent, but the motivation certainly can arise once the child has been taken to the doctor. Absent extraordinary circumstances, the child has no more motivation to lie than an adult would in similar circumstances. Everyday experience tells us most children know that if they do not tell the truth to the person treating them, they may get worse and not better." Id., 64 Ohio St.3d at 409-410,596 N.E.2d at 443-444.
Thus, pursuant to Dever, statements made by a child to a medical professional are not automatically excluded simply because the child did not possess the initial motivation to seek diagnosis or treatment, but rather was directed there by an adult. Once at the medical professional's office, however, it must be established that the child's statements were made for the purpose of medical diagnosis or treatment.
A trial court has broad discretion in determining whether a child's out-of court declaration is admissible as a hearsay exception. Dever at 410, 596 N.E.2d at 443-444. In making this determination, a trial court must consider the circumstances surrounding the child's out-of-court statement to determine if it was made to a medical professional for the purposes of diagnosis or treatment. Id.
In the present case, the state offered absolutely no evidence from which this court can discern the child's motivation for participating in the interview with Pomeroy. The child was never told the purpose of her visit with the social worker and Pomeroy herself testified that she was conducting an intake interview to investigate allegations of abuse. There was absolutely no evidence from which to establish that the purpose of this interview only was designed to provide the child with medical or psychological assistance, let alone the child's understanding that this was the purpose of her conversation with Pomeroy. Furthermore, while *Page 283 
the white lab coats and medical instruments traditionally seen at a doctor's office might signal in a child's mind the seriousness of the situation and the necessity to tell the truth, such as existed in Dever, there is no indication that a typically dressed social worker carrying an anatomically correct doll would evoke a similar reaction in the eyes of a child.
As previously discussed, the basis for the medical diagnosis and treatment exception to the hearsay rule is the belief that a person will tell a medical professional the truth in order to benefit his or her own course of treatment. In fact, this truthful motivation did not exist in this case, as acknowledged by Pomeroy when she noted that the child seemed "a little naive as to the truth" during her interview. Under these circumstances, the trial court properly determined that the alleged victim's out-of-court statement was inadmissible and not subject to the hearsay exception as set forth in Evid.R. 803 (4). Appellant's first assignment of error is without merit.
In the second assignment or error, appellant argues that the trial court erred in refusing to admit the alleged victim's statements pursuant to Evid.R. 807. Appellant asserts that the child was not reasonably obtainable to testify at trial for the state and that the totality of the circumstances surrounding her statement to Pomeroy contained particularized guarantees of trustworthiness.
Evid.R. 807 provides:
"(A) An out-of-court statement made by a child who is under twelve years of age at the time of trial or hearing describing any sexual act performed by, with, or on the child or describing any act of physical violence directed against the child is not excluded as hearsay under Evid.R. 802 if all of the following apply:
"(1) The court finds that the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness that make the statement at least as reliable as statements admitted pursuant to Evid.R. 803 and 804. The circumstances must establish that the child was particularly likely to be telling the truth when the statement was made and that the test of cross-examination would add little to the reliability of the statement. In making its determination of the reliability of the statement, the court shall consider all of the circumstances surrounding the making of the statement, including but not limited to spontaneity, the internal consistency of the statement, the mental state of the child, the child's motive or lack of motive to fabricate, the child's use of terminology unexpected of a child of similar age, the means by which the statement was elicited, and the lapse of time between the act and the statement. In making this determination, the court shall not consider whether there is independent proof of the sexual act or act of physical violence.
"(2) The child's testimony is not reasonably obtainable by the proponent of the statement. *Page 284 
"(3) There is independent proof of the sexual act or act of physical violence.
"(4) At least ten days before the trial or hearing, a proponent of the statement has notified all other parties in writing of the content of the statement, the time and place at which the statement was made, the identity of the witness who is to testify about the statement, and the circumstances surrounding the statement that are claimed to indicate its trustworthiness.
"(B) The child's testimony is "not reasonably obtainable by the proponent of the statement' under division (A)(2) of this rule only if one or more of the following apply:
"(1) The child refuses to testify concerning the subject matter of the statement or claims a lack of memory of the subject matter of the statement after a person trusted by the child, in the presence of the court, urges the child to both describe the acts described by the statement and to testify."
There is no dispute that the state eventually complied with the notification requirement as set forth in Evid.R. 807(A)(4). Evidence was also presented by the state through the testimony of McAliley, before the trial court's Evid.R. 807 determination, to establish some independent proof of the sexual act pursuant to Evid.R. 807(A)(3). Arguably, the state failed to satisfy the provisions of Evid.R. 807(A)(2) and 807(B)(1), as no one, other than the assistant prosecutor, attempted to elicit testimony from the alleged victim as to the acts described in the out-of court statement. Indeed, the child did eventually testify but indicated that no one "ever" touched her in an inappropriate manner. However, it is unnecessary to formally determine this issue because it is clear that the trial court did not err in failing to admit the hearsay statement pursuant to Evid.R. 807(A)(1).
As with other evidentiary issues, trial courts are vested with discretion in determining whether to admit evidence pursuant to Evid.R. 807. State v. Kobza (Dec. 22, 1995), Lake App. No. 94-L-086, unreported, at 4, 1995 WL 869963. In this case, the trial court determined that the child's hearsay statements to Pomeroy did not provide particularized guarantees of trustworthiness based on the social worker's admissions that the alleged victim may not have been truthful, as well as concerns that the child may have been coached into making false allegations against appellee. These concerns are adequately borne out in the record on appeal and we cannot hold that the trial court abused its discretion under these circumstances. Appellant's second assignment of error is without merit.
Based on the foregoing, the judgment of the trial court is affirmed.
[1] Although the complaint spelled appellant's first name as "Cory," we note that "Corry" is the proper spelling.
FORD, P.J., and NADER, J., concur. *Page 285